Robbery; ten years and one day.
This robbery occurred at a Junior Food Mart in Tuscaloosa, Alabama, on March 17, 1977. Clyde Jerry Skelton, the manager, was operating the store at the time. About 9:07 A.M., the appellant entered the store and purchased a drink. After leaving the store, he remained outside, standing near the building for a few minutes before re-entering the store. He purchased a cake, and, when the manager turned to give him his change, she saw a small weapon in his hand. Ms. Skelton said that he demanded money, and she gave him the bills from the register. She stated that she also gave him three dollars of her own. According to Ms. Skelton, when the appellant was leaving, he said that he would "blow" her head off if she followed him outside.
Ms. Skelton testified that her assailant was "shaky" at the time of the robbery and that she, "out of fear," gave him the money. After he left, she went to a drugstore and informed the owner of the drugstore that she had been robbed. She then went back to her store and called the police.
During the trial, Ms. Skelton described the person who robbed her as a black male with a "long-type head — sideburns and a goatee," who was wearing a light blue jumpsuit. Further, she said that there was something wrong with his eyes and that "there must be something wrong with his legs." She stated, "[H]is knees went in or something, and when he walks he gives a prissy walk."
According to Ms. Skelton, from the time the appellant entered the store until he left approximately two and a half to three minutes elapsed. The witness made a positive, in-court identification of the appellant as her assailant.
Judy Leonard testified that she was the office manager of the "Junior Food Stores of Tuscaloosa," and, on March 17, 1977, she went to the store operated by Ms. Skelton. After arriving at the store, the witness checked the register and found that approximately one hundred and forty dollars had been taken. She stated that this amount did not include the three dollars which had been taken from Ms. Skelton. At the end of Ms. Leonard's testimony, the State rested its case, and the appellant took the stand in his own behalf.
The appellant testified that he lived on Knoll Circle in Northport, Tuscaloosa County, Alabama, and that he lived there with *Page 1166 
his mother, brothers and sisters. He stated that, on the day in question, he was wearing a beard. During the trial, he testified that his eyes were "crossed." On the day in question, he was working with West Alabama Bottling Company as a helper on a "drink truck." He denied owning a pair of coveralls and said he did not rob the "Junior Food Mart of East Village."
The State called in rebuttal two witnesses, Lane Ray Harris, the appellant's employer on the West Alabama Bottling Company truck, and Tim Bigham. Harris stated that he could not swear that the appellant was working on March 17, 1977. Moreover, the witness said that there were some days on which the appellant did not work.
Tim Bigham testified that he was the manager of the snack bar in the basement of the courthouse and that Lane Ray Harris delivered the drinks to his business establishment. Mr. Bigham knew Ronnie Lowe because he was Harris' helper. Bigham stated that, during the period from February to July, he could not state that Ronnie Lowe was with Harris every Thursday when a delivery was made to his business establishment.
 I
The appellant has raised, on this appeal, two issues which have been considered together because they raise specific problems regarding the attitudes and preconceived ideas of veniremen who were chosen for the jury in the present case. The appellant complains that the trial court erred when it refused to grant defendant's challenge to jurors who answered in the affirmative to a question "regarding their beliefs whether a defendant would lie just because he was a defendant."
Additionally, he contends that the trial court erred when it refused to grant the defendant's challenge to jurors who answered in the negative regarding the issue "would they vote for acquittal even though they believed the defendant was probably guilty if they had a reasonable doubt after hearing the evidence and instructions of the court."
In order to review these issues concerning the "prospective juror," we must look to the pertinent part of the record, which reads as follows:
"MR. GRAY: Do you think that a person who is accused of a crime would probably lie; please stand.
"A VOICE: Speck Shirley.
"MR. GRAY: Mr. Shirley. Wait just one second. Let me ask Mr. Shirley, do you think that the fact that he was — Does anyone else want to stand?
"Do you understand my question? I see some of you shaking your heads.
"The question is, do you think that a person who is accused of a crime would probably lie? If so, please stand.
"All right. Let me get your names, first of all. Let's start over here on the right with Mr. Shirley, and go across the front, and then the next row all the way across, and so forth.
"A VOICE: Speck Shirley.
"MR. GRAY: All right. You may be seated for the time being, please.
"A VOICE: Dorothy Cubine.
"A VOICE: Ethel Rutley.
"A VOICE: Herman Collins.
"A VOICE: Alma Rutley.
"A VOICE: Let me ask you just a second: Are you two related (indicating)?
"A VOICE: Well, we just married into the same family.
"A VOICE: Gertrude Wilson.
"A VOICE: Alma Roberts.
"A VOICE: Jean Griffin.
"A VOICE: Nancy Olson.
"A VOICE: Alan Roberts.
"A VOICE: John Gooden.
"MR. GRAY: All right.
"A VOICE: Ethel Griffin.
"A VOICE: Henrietta Wilson.
"A VOICE: Adelle Custard.
"A VOICE: Elizabeth Brant.
"A VOICE: Thurman Lee. *Page 1167 
"A VOICE: James P. Richardson.
"A VOICE: Lamar Pearson.
"A VOICE: Norma Franklin.
"A VOICE: Margaret Warbington.
"A VOICE: Letaw Martin.
"A VOICE: Billy Joe Bagwell.
"A VOICE: Lang Ray.
"MR. GRAY: Now, those of you who just answered, you believe that a person accused of a crime would probably lie. I would ask you whether or not you think that that would impair your ability to consider the truthfulness of his answers? If so, please stand.
"A VOICE: Would you repeat that, please, sir.
"MR. GRAY: Would that affect or impair your ability? Please answer as truthfully as you can; we want to know it, you know, if you would consider that — we would like to know that. Would that affect or impair your ability to consider the truthfulness of his answers — the person accused of a crime? If so, please stand.
"A VOICE: Jeanne Griffin. What do you mean `consider the truthfulness?' That question is extremely hard to understand.
"MR. GRAY: All right. The question that I previously asked you was, if a person who was accused of a crime, if you thought he would probably lie? And you said, as I understood it, yes, you thought that he would probably lie.
 "All right, if you felt that he would probably lie, do you feel that you could consider that he is telling the truth from the stand?
"MS. JEANNE GRIFFIN: What do you mean `consider the truthfullness? What does that mean?
"MR. GRAY: Well, do you think that you could consider that the witness was telling the truth if he took the stand in his own defense?
"MS. JEANNE GRIFFIN: Do you mean, would you have an open mind as to whether it was true or not? Is that what you are asking?
"MR. GRAY: Yes.
"MS. JEANNE GRIFFIN: Okay, fine.
"MR. GRAY: If so, please stand.
"A VOICE: Norma Franklin. When I stood in answer to your question that I believed they would tell a lie, that did not necessarily mean in connection of his being accused of a crime. I think anybody will lie under certain circumstances. This is not necessarily because he is accused of a crime, but everybody will lie now and then, I believe.
"A VOICE: Lang Ray, and those are my feelings, also.
"MR. GRAY: Okay. Well, let me go back and ask you this, then. Would you be able to have an open mind about what he was testifying? If so, please stand.
"THE COURT: I think you better turn that question around if you are going to get all those names.
"MR. GRAY: All right. Is there anybody who just stood a minute ago, who could not have an open mind about what he testified about? If so, please stand.
 "All right. Now, do you understand what I am saying? Is there anyone who stood on the question, `Do you think that a person who is accused of a crime would probably lie' — any of you who stood on that question indicating that you thought he would probably lie, now, if you feel that you could not have an open mind about that, please stand.
"(No response.)
"MR. GRAY: All right. Let the record reflect that no one stood.
"Now, ladies and gentlemen, in the trial of a criminal case, we expect that the Judge will ultimately charge you that the law requires that the burden of proof is on the prosecution to prove that a person is guilty beyond a reasonable doubt and to a moral certainty. And he will explain all that to you at the proper time, assuming you sit on this case. The question I would have for you is: Assuming that at the conclusion of the evidence, that it were to be your opinion that the defendant probably committed the *Page 1168 
crime with which he is charged, but you were not —
"MR. MADDOX: Judge, we will have to object to this at this time, and I feel it is improper on voir dire examination for him to be explaining the law to the jury at this time, and asking them questions regarding hypothetical facts in that situation.
"MR. ESPY: Your Honor, I would be glad to present to you a copy of the exact question we propose to ask, and let you rule on it in advance.
"THE COURT: Well, I think your objection is a little untimely, Mr. Maddox. I will have to wait until he finishes that question before I can understand.
"If you ladies and gentlemen will refrain from standing or answering, go ahead and finish your question, Mr. Gray.
"MR. GRAY: All I am asking you is, assuming that we took evidence, you were to be of the opinion that the defendant was probably guilty, but you were not convinced beyond a reasonable doubt, would you vote to acquit him? If so, please stand.
"MR. MADDOX: We object.
"THE COURT: Overrule.
"(No response.)
"MR. GRAY: At the conclusion of the evidence, in your opinion, if you thought the defendant was probably guilty but you were not convinced beyond a reasonable doubt, would you vote to acquit him?
"MR. MADDOX: Your Honor, I have to renew my objection. What he is doing in effect here, is going to legal definitions with the jury at this point, by referring to, `probably guilty,' and the terminology, `to a moral certainty and beyond a reasonable doubt.' And those terms have not been explained as a matter of law, to the jury at this time by the Court. And it is improper at this time for him to ask questions along those lines.
"THE COURT: I will overrule at this time, Mr. Maddox. Go ahead.
"MR. GRAY: All right. Now, those of you who understood the question may stand: If you would vote to acquit.
"All right. Now, the rest of you may remain seated. The ones that are standing, we need your names. Let's start over here, please.
"A VOICE: Alan Roberts.
"A VOICE: Nancy Olson.
"MR. GRAY: Mrs. Olson?
"MRS. NANCY OLSON: Yes.
"A VOICE: Jeanne Griffin.
"A VOICE: Alma Roberts.
"A VOICE: Emma Rutley.
"A VOICE: Ethel Rutley.
"A VOICE: John Hamner.
"MR. GRAY: Mr. Hamilton?
"MR. HAMNER: Hamner, h-a-m-n-e-r.
"A VOICE: Speck Shirley.
"A VOICE: Herman Collins.
"A VOICE: Dorothy Cubine.
"MR. GRAY: All right.
"A VOICE: Ethel Griffin.
"A VOICE: Margaret Warbington.
"A VOICE: Norma Franklin.
"A VOICE: Sandra Baker.
"A VOICE: Gaye Cabell.
"A VOICE: John Faucett.
"A VOICE: James Richardson.
"A VOICE: Lamar Pearson.
"A VOICE: Letaw Martin.
"A VOICE: Harvey Davis.
"A VOICE: Billy Bagwell.
"A VOICE: Lang Ray.
"MR. GRAY: All right. Now, those of you who did not stand on that question, would you please stand. Those of you who did not stand on that question, please stand.
"And give your names to the court reporter, please.
"A VOICE: Thurman Lee.
"A VOICE: Elizabeth Brant.
"A VOICE: Adelle Custard. "A VOICE: Genia Washington.
"A VOICE: Henrietta Wilson.
"MR. GRAY: Wait just a minute, please. *Page 1169 
"THE REPORTER: Mrs. Wilson, yours was the last name I heard.
"MRS. HENRIETTA WILSON: Yes, Henrietta Wilson, I did not stand because I did not entirely understand the question.
"MR. GRAY: All right. I will come back to you in just a minute, then.
"A VOICE: Gertrude Wilson.
"A VOICE: John Gooden.
"A VOICE: Alfred Samuel.
"A VOICE: Eddie Byrd.
"A VOICE: Ronnie Walters.
"A VOICE: Adelle Custard. I did not understand that question, either.
"MR. GRAY: All right, so there were two of you who did not understand it?
"MRS. BRANT: I did not understand the question, either.
"MR. GRAY: All right. Three of you did not, then. Now, the Judge will instruct you as to what the law is, what law to apply. If, at the conclusion of the evidence and the conclusion of the Judge's instructions, you were — in your opinion, you thought that the defendant was probably guilty, but you were not convinced beyond a reasonable doubt and to a moral certainty, according to the definitions that you were given, would you vote to acquit him?
"MRS. BRANT: I think I would.
"MR. GRAY: All right. Do you want to change what you said, then?
"MRS. BRANT: Yes, I change.
"MR. GRAY: All right.
"A VOICE: Adelle Custard.
"MR. GRAY: All right. Now, then, thank you very much ladies and gentlemen, for your patience and my, perhaps, inability to explain these things to you.
"I have a few more that may be a little difficult to understand. If you do not understand it, tell me you don't understand it.
"Do any of you ladies and gentlemen have an opinion that just because a man is indicted by the Grand Jury, he is probably guilty? If so, please stand. Just because a man is indicted by the Grand Jury, he is probably guilty? If so, please stand.
"(No response.)
"MR. GRAY: Let the record so reflect that none stood.
"Let me ask you this, ladies and gentlemen. Do any of you have an opinion that the fact that a person is accused of a crime and is in this court to be tried for that crime, indicates that he is probably guilty? If so, please stand.
"(No response).
"MR. GRAY: Is there anyone who did not understand the question?
"(No response).
"MR. GRAY: Let the record reflect that none stood."
This court, in Tidmore v. City of Birmingham, Ala.Cr.App.,356 So.2d 231, laid down rules regarding the disqualification of a prospective juror. In that case, the court said:
 "To disqualify a prospective juror, he must have more than a bias, or fixed opinion, as to the guilt or innocence of the accused. Such opinion must be so fixed as that it would bias the verdict a juror would be required to render."
See McCorvey v. State, Ala.Cr.App., 339 So.2d 1053 and Johnsonv. State, Ala.Cr.App., 356 So.2d 769.
In discussing this same issue, this court, in Dial v. State, Ala.Cr.App. (2 Div. 245, Ct.Cr.App.Ms., Nov. 20, 1979), quoting from Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031,44 L.Ed.2d 589, observed:
 "`To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'
 "At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it *Page 1170 
remains open to the defendant to demonstrate `the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" [Emphasis added].
According to this court in Dial, supra, the burden rests on the defendant to adduce evidence to demonstrate that the juror could not be impartial.
The voir dire in the present case did not indicate that the prospective jurors could not lay aside their partiality. When the threshold question, whether the accused would lie, was asked, a number of jurors stood to answer affirmatively. However, when the question was clarified and the question, "Whether they could not have an open mind about what he testified about," was asked, no response was made by the jurors. Regarding the question, "[I]n your opinion [if] you thought that the defendant was probably guilty, but you were not convinced beyond a reasonable doubt and to a moral certainty, according to the definitions that you were given, would you vote to acquit him?", none of the jurors answered in the affirmative, some nine answered in the negative.
We note that the record does not indicate any other questions by the defense attorney which would demonstrate that the opinions of these specific jurors were so fixed that they would "bias the verdict that a juror would be required to render."Tidmore v. City of Birmingham, supra.
Under Murphy v. Florida, supra, and Dial v. State, supra, the appellant has failed to demonstrate that the defendant could not receive a fair and impartial trial. We note that, in qualifying the veniremen who ultimately composed the jury, the trial judge asked the following questions:
 "THE COURT: Do any of you ladies and gentlemen have a fixed opinion as to the guilt or innocence of the defendant?
"(No response.)
. . . . .
 "THE COURT: Do any of you know anything that would prevent you from serving impartially as a juror in this case?
"(No response.)"
Considering these circumstances, we believe that, under Tidmorev. City of Birmingham, supra, and Johnson v. State, supra, disqualification of a prospective juror must be predicated on more than that prospective juror's biased or fixed opinion as to the guilt or innocence of the accused. This court said inJohnson v. State, supra, that, "His opinion must be so fixed that it would bias the verdict that the juror would be required to render."
Under the present case, the appellant has not demonstrated the requirement of Murphy v. Florida, supra, and Dial v. State, supra, that the prospective juror's opinion was so fixed that it would bias the verdict he was called on to render.
Therefore, the denial of the appellant's challenge for cause to the prospective jurors was proper.
 II
The appellant also asserts that the trial court was in error when it failed to grant the appellant's challenge for cause to a venire person who was employed by the district attorney at the time of the trial.
In United States v. Wood, 299 U.S. 123, 57 S.Ct. 177,81 L.Ed. 78, the United States Supreme Court, speaking on the issue of disqualification of government employees to serve as jurors in criminal cases, said:
 "[T]he imputation of bias simply by virtue of any governmental employment, without regard to any actual partiality growing out of the nature and circumstances of particular cases, rests on an assumption without any rational foundation.
 "It is said that particular crimes might be of special interest to employees in certain governmental departments, as, for example, the crime of counterfeiting, to employees of the treasury. But when we consider the range of offences and the general run of criminal prosecutions, it is apparent that such cases of special interest would be exceptional. The law permits full inquiry as to actual bias in any such instances." *Page 1171 
In the case at bar, there was no proof that the venire person would not render a fair, just, and impartial verdict. The fact that she was employed by the district attorney's office did not alone impute bias as a matter of law.
Therefore the trial court properly exercised its discretion in denying appellant's challenge for cause of the prospective juror. See McAdory v. State, 37 Ala. App. 349, 68 So.2d 68.
Having searched the record for error and found none, we affirm the judgment of conviction by the Tuscaloosa Circuit Court.
AFFIRMED.
All the Judges concur.