Rape; sentence: thirty years' imprisonment.
Two issues are presented on this appeal.
 I
The appellant contends that the trial court's refusal to grant his challenge for cause against certain prospective jurors violated his constitutional right to a trial by a fair and impartial jury.
During the voir dire examination of the jury venire by defense counsel, the following occurred:
 "Mr. Robinson: Okay. Thank you. Now, I would like you all to raise your *Page 925 
hand to this question if you think your answer would be yes. Do you all expect the Defendant to testify in this case? Would you expect him to testify in his defense in this case? If you do, please raise your hand.
"Let's start back here. What was your name?
"PJ HIGGINS: Mrs. Higgins.
"PJ GATEWOOD: Mary Gatewood.
"MR. ROBINSON: Goodwood?
"PJ GATEWOOD: Gatewood.
"MR. ROBINSON: I'm sorry. Yes, Ma'am?
"PJ FLEMMING: Mrs. Flemming.
"MR. ROBINSON: And you're Mrs. Evans?
"PJ ETINGER: Etinger.
"MR. ROBINSON: Yes, ma'am. Mr. Boyd, you would?
"PJ BOYD: Yes.
 "MR. ROBINSON: Anybody else on the second — Mrs. Spaulding?
"PJ SPAULDING: Yes.
 "MR. ROBINSON: Okay. Anyone else up here in the jury box? Yes, ma'am, your name is Mrs. Cofer?
"PJ COFER: Yes.
 "MR. ROBINSON: Anyone else. I saw you raise your hand a little bit there. You're Mrs. Baugh, right?
"PJ BAUGH: (Juror nods head.)
 "MR. ROBINSON: And Mr. Ware. All of you would expect my client to testify on his behalf and defense. If he did not testify on his behalf or in his defense, would you consider that as an indication of guilt in this case, especially to those of you who raised your hand?
 "So, you would expect him to testify is what you are telling me? But, if he didn't you wouldn't say he is guilty, is that what you are telling me?
"(No response.)
"PJ LADY JUROR: Give himself a chance?
 "THE COURT: That is what he is asking you, ma'am. If he did not take the witness stand.
"PJ BAUGH: He is still innocent until proven guilty.
 "THE COURT: That is my next question. Let me rephrase that. Do you all believe in your own constitutional right, that you don't have to testify against yourself?
"(No response.)
"THE COURT: Okay. Thank you.
"(Juror voir dire continued.)
 "THE COURT: Mr. Robinson you advised me that you wish to take an exception on the record. Let's get what the objection is so I can give you a ruling. As I understand, you want to challenge for cause those jurors which made response to your question, which was in substance — the question or your inquiry, of those that expected your Defendant to testify in his defense.
"MR. ROBINSON: Yes, sir.
 "THE COURT: You wish to challenge for cause those jurors that responded to that question?
"MR. ROBINSON: Yes, sir.
 "THE COURT: I deny your challenge for cause and will give you an exception."
Counsel for appellant contends in his brief that as a result of the trial court's denying his challenge for cause "three of the prospective jurors could not be stricken by peremptory challenges." We are unable to determine which members of the venire were selected as jurors and which were stricken or by what means they were stricken. The jury selection process is not a part of this record on appeal, nor does the record disclose who was on the venire and who ultimately sat on the petit jury in this case. This court is bound by the record and not by allegations in the briefs. Edwards v. State, 287 Ala. 588, 253 So.2d 513 (1971); Pope v. State, 345 So.2d 1388
(Ala.Cr.App. 1976), cert. dismissed, 345 So.2d 1390 (Ala. 1977).
Of the twelve statutory grounds for challenges for cause, only the one enumerated in Code 1975, § 12-16-150 (7), relates to the appellant's contention in the instant case — that the prospective juror "has a fixed opinion as to the guilt or innocence of *Page 926 
the defendant which would bias his verdict." That ground may be proved "by the oath of the person alone." Code § 12-16-151. Here, none of the challenged veniremen were requested by defense counsel to state under oath that if the defendant did not testify they would have a fixed opinion against him which would bias their verdict.
Judge DeCarlo, speaking for this court in McCorvey v. State,339 So.2d 1053, 1057 (Ala.Cr.App. 1976), stated:
 "To disqualify a prospective juror, he must have more than a bias, or fixed opinion, as to the guilt or innocence of the accused. Such opinion must be so fixed as that it would bias the verdict a juror would be required to render. . . ."
The burden is upon the defendant to prove that a juror cannot be impartial. Lowe v. State, 384 So.2d 1164 (Ala.Cr.App. 1980), cert. denied, 384 So.2d 1171 (Ala. 1980). Here, the defense failed to meet that burden. It was only shown that some veniremen would "expect" the defendant to testify. We are left with no indication in the record as to (1) whether those jurors would have a fixed opinion against the defendant if he did not testify, and (2) if so, whether such opinion would be so fixed that it would bias their verdict.
We likewise note that the trial court gave the defendant's requested Charge No. 28:
 "In a criminal case, a defendant is not compelled to take the witness stand. By the defendant's plea of not guilty, he denies the charges against him, and does not have to prove a thing. The failure of the defendant to testify cannot be used against him and no inference of guilt can be drawn therefrom. The defendant has the right to remain silent and the fact that he did not testify or personally present evidence should not prejudice him in any way."
We therefore find no error on the part of the trial court in refusing the defendant's challenges for cause.
 II
The appellant contends that the trial court erred in refusing to give his requested Charge No. 3.1, which is as follows:
 "In appraising the identification testimony of a witness, you should consider the following:
 "Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender? Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had an occasion to see or know the person in the past.
 "Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? May [sic] may taken into account both the strength of the identification, and the circumstances under which the identification was made. If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to her for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrance [sic] of time and the next opportunity of the witness to see the defendant, as a factor bearing on the reliability of the identification.
 "You may also take into account that an identification made by picking the defendant out of a group of similiar [sic] individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.
 "Finally you must consider the credibility of each identification witness in the same way as any other witness, consider whether she is truthful and consider whether she had the capacity and opportunity to make a reliable observation on the matter covered in her testimony.
 "I again emphasize that the burden of proof on the prosecutor extends to every *Page 927 
element of crime charged, in this case the crime of Rape, and this specifically includes the burden of proving beyond a reasonable doubt into [sic] a moral certainty the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty." (Emphasis added.)
The above requested charge was lifted from the appendix toUnited States v. Telfaire, 469 F.2d 552 (D.C. Cir. 1972), wherein the charge is designated as "Model Special Instructionson Identification." That charge was set out in that case as a suggested model for the trial judges in the District of Columbia to use on a noncompulsory basis with appropriate adaptations. The charge is an abstract statement of legal principles and is not phrased as requested charges are required to be phrased in this state, that is, hypothesized on a belief from the evidence. Hudson v. State, 335 So.2d 208 (Ala.Cr.App. 1976), cert. denied, 335 So.2d 211 (Ala. 1976).
There are also several other grounds for refusing to give the instant charge. A requested charge is properly refused if it contains a misspelled word. State v. Owen, 279 Ala. 281,184 So.2d 362 (1966). As indicated above, the words "occurrence" and "similar" were misspelled. A charge may likewise be refused if it is ungrammatical or contains a verbal inaccuracy. Reederv. State, 210 Ala. 114, 97 So. 73 (1923). In the instant charge, one sentence begins by stating "May may take into account." Obviously, the writer intended for the sentence to being "You may." Another grammatical error appears in the last paragraph wherein the writer referred to "a reasonable doubt into a moral certainty" rather than referring to a reasonable doubt "and to" a moral certainty.
We find the charge in question to contain an additional verbal inaccuracy in referring to the recollection of the female identification witness as "his" recollection. As stated in Blalock v. State, 369 So.2d 35, 37, (Ala.Cr.App. 1979), cert. denied, 369 So.2d 38 (Ala. 1979), "This court still recognizes the difference between the male and female gender." Therefore, the charge contained a verbal inaccuracy in that regard.
In addition to the abstract nature of the entire charge, we find the following paragraph to be particularly offensive: "You may also take into account that an identification made by picking the defendant out of a group of similiar [sic] individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness." There is no evidence that identification was made from a lineup. In fact, the prosecutrix testified that no lineup was held. Her identification of the defendant was from a photographic array. Therefore, the above-quoted portion of the charge is not only abstract as not being supported by any of the evidence in the case, but it would have also confused and misled the jury if the trial judge had read it to them.
Even if the above charge had not contained any verbal inaccuracies or grammatical errors, the mere fact that it came from United States v. Telfaire, supra, would not insure its propriety for use in the courts within this jurisdiction. Merely lifting language from an appellate court opinion does not insure its acceptability as a correct instruction to the jury. Knight v. State, 273 Ala. 480, 142 So.2d 899 (1962); Tatev. State, 337 So.2d 13 (Ala.Cr.App. 1976).
We have considered all questions apparent on the record or reserved in the trial court below pursuant to Code § 12-22-240
and find no error prejudicial to the substantial rights of the appellant.
AFFIRMED.
All the Judges concur. *Page 928