PER CURIAM.
This court’s opinion dated January 22, 1985, is withdrawn and the following opinion is substituted as the opinion of this court.
This appellant, Glen Allen McGee, was convicted on a jury trial on a count of an indictment charging that he “did, with intent to defraud, possess or utter a forged instrument,” consisting of a check dated February 23, 1983, that purported to be signed by James 0. Counts and made payable to the order of Billy Jackson, “having knowledge that said instrument was forged, in violation of Section 13A-9-6 of the Code of Alabama.” After due notice had been given by the State of its intention to proceed against defendant under the Habitual Felony Offender Act, a sentence hearing was conducted at which it was shown that defendant had been previously convicted of three felonies, and at the conclusion of the hearing the court sentenced him to imprisonment for life.
We quote the first few paragraphs of the STATEMENT OF THE FACTS contained in appellant’s brief, which STATEMENT OF THE FACTS is accepted “as being substantially correct” and is “adopted by reference” in brief of appellee:
“On February 23 or 24, 1983, two black males, later identified as Billy Junior Byrd and Glen McGee, entered White’s Grocery in Enterprise, Alabama. They had in their possession a check in the account of Mrs. James 0. Counts, Jr., made payable to Billy Jackson for $68.00. “The endorsement was by James 0. Counts, Jr., who was deceased. The check was signed at White’s Grocery by Billy Byrd. Both individuals left carry *687 ing merchandise and the change from the check.
“On February 25, 1983, during an interview at the Enterprise Police Department Glen Allen McGee gave a tape recorded statement to Officer Burford Roberts. “During the trial of this case, the Defendant took the stand on his own behalf. He testified as to his prior convictions, all crimes of property.”
By the first issue presented by appellant, he contends that the trial court erred in refusing defendant’s requested written charges 1 through 4.
Defendant’s requested written charge No. 1 was as follows:
“The Court charges the jury that the humane provision of the law is, that there should not be a conviction upon the evidence unless to a moral certainty it excludes every other reasonable hypothesis than that of the guilt of the accused. No matter how strong may be the facts, if they can be reconciled with the theory that some other person may have done the acts, then the guilt of the accused is not shown by that full measure of proof which the law requires.”
The last sentence of defendant’s requested charge No. 1 justifies the refusal of the charge inasmuch as the State was not contending that this appellant was the only participant in the crime charged. According to the testimony of witnesses for the State, appellant participated with Billy Junior Byrd in the commission of the crime charged. The jury could have been incorrectly led to believe by the giving of the charge that if Byrd was guilty, this appellant was not guilty.
Defendant’s requested written charge No. 2 was as follows:
“The Court charges the jury that confessions of the Defendant in cases of this kind are received with great caution. They are easily fabricated, and the detection and exposure of there [sic] falicy [sic] is often difficult. But when confessions are deliberately made and precisely identified, they are among the most satisfactory and effectual proofs of guilt. In consideration and determination of the credibility of confessions, or the effect and weight to which they are entitled, the jury must look to all the facts and circumstances under which the confessions are made; those which are introduced before the Court, if shown to them, as well as any other that may be introduced.”
The charge contains some expressions that have been authoritatively made in some reported cases but which would be inapplicable to the evidence in the instant case. It is difficult for us to understand how the defendant would have been benefited by the charge and for that reason how he could have been injured by the refusal thereof. A confession is emphasized, but there was no contention by either party that defendant confessed the crime; there was some evidence to the effect that he made some incriminating statements. The charge was properly refused by reason of its several deficiencies, including the obvious orthographic mistakes therein and the argumentative nature thereof.
The following is defendant’s requested charge No. 3:
“The Court charges the jury that although the Defendant stands charged with others, to-wit: Billy Junior Byrd, that he is not chargeable with anything which any other one named Defendant may have done unless he, Glen Allen McGee, advised, aided or abetted others in the commission of the offense intending at the time by his word or act to aid or encourage the commission of the offense.”
If the case had been submitted to the jury on a count of an indictment charging appellant-defendant with forging the check under consideration, there would have been some merit to appellant’s contention that the charge should have been given, as the transcript discloses that the actual forgery of the check was by Billy Junior Byrd and that any criminal responsibility of Glen Allen McGee would have been as an aider or abettor. The record proper shows that the *688 indictment originally contained two counts, the first count being for forgery in the second degree and the second count for possession of a forged instrument in the second degree. The record further shows that “at close of State’s case in chief the State’s motion to dismiss Count One” was granted by the trial judge. It is to be noted from that part of the agreed upon STATEMENT OF THE FACTS in appellant’s brief that “Billy Junior Byrd and Glen McGee, entered White’s Grocery” and “had in their possession” the check specified in each count of the indictment. According to testimony of witnesses called by the State, neither of the two men was any more the aider or abettor of the other than was the other, and ample evidence was introduced to permit a finding that this appellant was not merely an aider or abettor in the commission of the crime. The trial court was correct in refusing defendant’s requested Charge No. 3.
Defendant’s requested Charge No. 4 was as follows:
“The Court charges the jury that if they believe from the evidence that the Defendant, Glen Allen McGee, together with Billy Junior Byrd, were passing by White’s Grocery on the afternoon the alleged forgery and possession of a forged instrument is said to have been done, and said offense was committed by Billy Junior Byrd from causes having no connection with the common object with which they happened to be there, the responsibility for such offense rests solely on the actual perpetrator of the crime, and you, the jury, cannot find the defendant, Glen Allen McGee, guilty simply because he happened to be present at the time the offense was committed.”
The charge is hypothesized on facts that are not to be found in the evidence. According to the testimony of witnesses called by the State, this appellant did more than happening “to be present at the time the offense was committed.” According to the testimony of the only witnesses called by the defendant, the defendant himself and his mother, defendant was not present at White’s Grocery on the occasion the check involved was uttered. Their testimony was to the effect that, although on or about the same day the check was uttered Billy Junior Byrd paid this appellant one-half the face amount of the check, such payment was for work that had been performed by the two men or, as testified to by defendant, was, “for yard work that me and him went out and did.” There was no evidence to support the hypothesis set forth in defendant’s requested Charge No. 4, and the refusal of the charge was not error. Boggs v. State, 270 Ala. 209, 116 So.2d 903, 906 (1959); Parvin v. State, 248 Ala. 74, 26 So.2d 573, 574 (1946).
By the first issue presented in appellant’s brief, he also contends that the trial court erred “in failing to charge at all on the inferences to be drawn from prior criminal convictions.” In pressing this contention, the following statement is made in appellant’s brief:
“It is not Appellant’s contention that the State improperly used prior convictions to impeach Defendant’s testimony. It is, however, Appellant’s belief that irredeemable prejudice was done when the State used those convictions improperly in its closing argument, which error was compounded by lack of curative instructions.”
Appellant does not convince us that in the absence of any written charges requested by defendant on the subject, the trial court should have instructed the jury “on the inferences to be drawn from prior criminal convictions.” Furthermore, as there is nothing in the transcript of the proceedings to show any of the “closing argument” of counsel for the State, we are unable to determine whether “irredeemable prejudice was done” by any of such argument. As stated in Harris v. State, 420 So.2d 812, 816 (Ala.Cr.App.1982):
“... This court is bound by the record and not by allegations or arguments in brief reciting matters not disclosed by the record. Vincent v. State, 399 So.2d 923 (Ala.Cr.App.1981); Conner v. State, *689 382 So.2d 601 (Ala.Cr.App.1979), cert. denied, 382 So.2d 605 (Ala.1980).”
By another issue presented in appellant’s brief, he contends, “The trial court erred in failing to dismiss the charges against Defendant for denying him a speedy trial.” We now consider each of the prongs of the four-prong test set forth in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972): “Length of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant.” As to the length of the delay, the record shows the defendant was arraigned on May 27, 1983, and the case was set for trial on June 20, 1983, but the case was not reached the week or weeks of such setting; it was again set in September 1983, at which time the trial judge continued all criminal cases; it was again set in a week in October 1983, and a jury was selected for the trial thereof, but before the trial commenced the father of one of the jurors selected became gravely ill and the case was continued for trial until the next session of jury cases early in February 1984. On February 3, 1984, defendant’s attorney filed a motion to dismiss the case on the ground that he had been denied a speedy trial, which motion was denied by the trial judge on a hearing thereof on February 7, 1984. On that date, the trial of the case commenced; it was concluded the following day.
As to the length of the delay, defendant was tried within eight months and one week from the date of his arraignment. He was arraigned in less than a week after his arrest. Although many felony cases are tried within less time after the accused has been arrested on an indictment, it cannot be said that the intervening time in the instant case was extraordinarily greater than in the average case. As to the reason for the delay, it does not appear that the prosecution can be justly blamed therefor and that each continuance of the ease from its setting was for good cause. As to whether there was an assertion by defendant of his right to a speedy trial, the record shows that defendant did assert such right by a motion filed October 11, 1983, which motion the court granted, and that the court was in the process of affording the defendant a trial on October 20, 1983, on which date a jury had been selected to try the case, but before commencing the actual trial a father of one of the jurors became “gravely ill” and such illness required that such juror be excused, and the case was then “continued to next term,” which commenced in the first week of February 1984. On February 3, 1984, defendant filed a motion to dismiss on the ground that his “right to a speedy trial” had been “denied in that he was not brought to trial during the week of October 17, 1983.” As to the “prejudice to the defendant” prong of the test of Barker v. Wingo, supra, appellant’s attorney sets forth two claims of prejudice to defendant. One is that the lapse of time between the date of the alleged offense and the date of the trial caused a definite lapse of memory on the part of a witness for defendant, his mother, in her testimony to the effect that defendant was not present at the time and place the testimony of witnesses for the State showed that Billy Junior Byrd and another man entered White’s Grocery in Enterprise with the check that constituted the specific written instrument involved in this case. We are not convinced that there would have been any significant difference between the memory of the witness when the case was actually tried and what it would have been months earlier. The last part of her testimony, which was to the effect that defendant was not at White’s Grocery in Enterprise at the time of the commission of the alleged crime, was during the cross-examination of her by counsel for the State, which was as follows:
“Q But as far as seeing him at any particular place outside of your house, you don’t know every minute of the day where he was?
“A I couldn’t. That would be impossible for me to know every minute. But I tried to keep up with him and talk to him, because he just had got out.”
*690 It appears that her expression “because he had just got out” was referable to his having been released from prison for felonies previously committed by him. Appellant also contends that “defendant suffered demonstrable prejudice under the criterion of Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 637 (1969), in that the length of delay violated against his receiving the benefit of concurring jail time.” We see no analogy in Smith v. Hooey applicable to the instant case. The expression therein at 393 U.S. at 378, 89 S.Ct. at 577, relied upon by appellant reads, “[Fjirst, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed.” Although Smith was “already in prison” and for that reason “might receive a sentence at least partially concurrent” with the sentence challenged in the case of Smith v. Hooey, the appellant in the case sub judice, albeit previously in prison, was not in prison when this prosecution was commenced against him. He had served all of the time required of him for his previous convictions and had been finally released from prison.
After a thorough consideration of the argument advanced by appellant in his brief and consideration of the four prongs of the test stated in Barker v. Wingo, supra, we are convinced that appellant’s Sixth Amendment right to a speedy trial was not violated.
The only other issue presented in appellant’s brief is thus stated:
“The trial court erred in sentencing Defendant to life in the penitentiary as being cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution.”
In his argument as to this issue that the Eighth Amendment to the Constitution of the United States, prohibiting the infliction of “cruel and unusual punishment,” was violated, appellant relies heavily upon Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), in which by a majority opinion the Supreme Court vitiated a sentence to life imprisonment without possibility of parole. However, the proper United States Supreme Court decision that deserves attention in this instance is that of Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). This court has indicated that the three-prong proportionality analysis in Solem should be rejected in cases in which the punishment is anything other than life without parole, and the Rummel rationale utilized instead. See McLester v. State, 460 So.2d 870 (Ala.Cr. App.1984); Brook v. State, 456 So.2d 1142 (Ala.Cr.App.1984); and Wilbourn v. State, 457 So.2d 1001 (Ala.Cr.App.1984). Furthermore, in the recent case of Ex parte Harbor, 465 So.2d 460 (Ala.1985), the Alabama Supreme Court held: “We cannot agree with the petitioner’s argument that the Supreme Court of the United States in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), required appellate courts to test all sentences against the proscription of the cruel and unusual punishment clause of the Eighth Amendment to the Constitution.”
Perhaps the most glaring reason that the Rummel rationale should be adopted in the case at bar is the factual similarities between the two cases. In Rummel the defendant had previously been charged and convicted for the fraudulent use of a credit card and for passing a forged check. Rum-mel pleaded guilty to both offenses and received three years’ imprisonment and four years’ imprisonment, respectively. In the triggering charge that led to the prosecution’s use of the Texas recidivist statute, the Rummel defendant was charged with the offense of obtaining $120.75 by false pretenses. Since the amount was greater than $50, the offense was classified as a “felony theft,” carrying with it, by itself, a range of punishment from not less than two years’ imprisonment to not more than ten years’. However, since the previous charges and convictions were cited in the indictment, the sentence required was life imprisonment. The jury in Rummel found the defendant guilty and also found that he had been convicted of two prior felonies. Therefore, the trial court imposed the sen *691 tence of life imprisonment upon the Rum-mel defendant. The United States Supreme Court held in Rummel that a mandatory life sentence imposed for the petitioner’s third felony conviction under the Texas recidivist statute was not “grossly disproportionate” to the petitioner’s crime.
In the present case, the appellant had previously been convicted of three felonies. The prior felonies were 1) buying, receiving, or concealing stolen property, 2) grand larceny, and 3) false pretenses. These offenses are obviously similar in nature to the offenses used to enhance the conviction of the defendant in Rummel.
Furthermore, the Eleventh Circuit Court of Appeals recently held that a mandatory life sentence imposed upon a defendant, in compliance with a recidivist statute, where the defendant had been previously convicted of three felonies, did not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution. See Seritt v. State of Alabama, 731 F.2d 728 (11th Cir.1984), cert. denied, — U.S. -, 105 S.Ct. 545, 83 L.Ed.2d 433 (1984).
We find that the sentence imposed upon, the appellant in the present case was authorized by section 13A-5-9, Code of Alabama 1975, and that the trial court’s sentence was a proper one. Therefore, we are of the opinion that the sentence of the trial court should stand..
APPLICATION FOR REHEARING GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED, AFFIRMED.
All the Judges concur.