**STATE of Missouri, Respondent,**

v.

**Wesley COX, Appellant.**

No. 59477.

Missouri Court of Appeals, Eastern District, Northern Division.

July 21, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 2, 1992.

Application to Transfer Denied Oct. 27, 1992.

Raymond L. Legg, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Joseph P. Murray, Asst. Attys. Gen., Jefferson City, for respondent.

CRIST, Presiding Judge.

Defendant appeals his jury trial convictions for three counts of obtaining controlled substances, dilaudid, diazepam (generic valium), and phenobarbital, and one count of attempting to obtain dilaudid by use of false address. Defendant was sentenced as a prior and persistent offender to three concurrent terms of ten years' imprisonment and a consecutive term of ten years' imprisonment. We affirm.

The sufficiency of the evidence is in dispute. Viewed in a light most favorable to the verdict, the evidence adduced at trial is as follows: The alleged false address was Route 1, Box 143, Kahoka, Missouri. One Maxine Masden, and not Defendant, had lived at this address since 1984.

Defendant and his companion, Regina Caudel, transients from Kentucky, visited the Kahoka, Missouri, office of Dr. Crenshaw on October 21, 1988. It was customary for Dr. Crenshaw's patients to fill out a patient information sheet. Defendant's sheet listed his address as Route 1, Box 143, Kahoka, Missouri. The handwriting

was that of Defendant's traveling companion, Regina Caudel.

Dr. Crenshaw then examined Defendant. Defendant stated he had just moved to the Kahoka area and purchased a farm. Defendant gave a medical history of cluster headaches, seizure activity, and head trauma. Defendant gave medical records to Dr. Crenshaw which substantiated the oral history given. Dr. Crenshaw prescribed a variety of medications for Defendant including dilaudid, valium and phenobarbital, all of which are controlled substances. Defendant did not complain of any recent seizure activity, nor did he appear groggy as a post-seizure individual would. Dr. Crenshaw was not convinced. He telephoned one of the Defendant's previous physicians who indicated he had received telephone calls from numerous other physicians about the dilaudid and did not feel Defendant would require "that level" of narcotic analgesic.

Unknown to Defendant, before he arrived at the Greening Pharmacy, Dr. Crenshaw called Pharmacist McKee to inform him there was something suspicious about the records that Defendant had provided. The doctor suggested that McKee only give Defendant fifteen of the dilaudid pills, and suggest he come back Monday for the others. Shortly thereafter, Defendant presented his prescriptions for dilaudid, phenobarbital and valium to Galen McKee, the owner of the Greening Pharmacy. The address on the prescription form was Route 1, Box 143, Kahoka. McKee told Defendant they only had fifteen dilaudid pills in the store but he would have the other forty-five dilaudid pills on Monday. Defendant said he would return on Monday. McKee filled Defendant's other prescriptions.

On the same day, Russell Riggins, a pharmacist in Memphis, Missouri, filled prescriptions written by Dr. Keller of Memphis for dilaudid, valium and phenobarbital for a Wesley Cox. The address used by Wesley Cox was Route 1 Box 143, Memphis, Missouri. Memphis and Kahoka are small towns in northeast Missouri approximately thirty miles apart. Defendant's

name was "Wesley Cox." Dr. Keller's appointment card was found in Defendant's possession.

Over the weekend, the sheriff's office checked the address Defendant provided and found that Defendant did not live there. When Defendant returned the next Monday for the balance of the dilaudids, he was arrested. Defendant gave the booking officer an address of Route 1, Box 55, Leadbetter, Kentucky. Later, during an interview, Defendant gave his address as Route 1, Box 143, Leadbetter, Kentucky.

Defendant did not testify at trial. He presented the testimony of his wife and his friend, Regina Caudel. His wife testified regarding Defendant's alleged history of seizures. The friend stated she had mistakenly written Defendant's address on Defendant's information sheet at Dr. Crenshaw's office as Route 1, Box 143, Kahoka, Missouri 63445.

■ For point relied on one, Defendant asserts the State did not make a submissible case for the reason Regina Caudel supplied the wrong address to Dr. Crenshaw, and not the Defendant. Although the patient information sheet was in Regina Caudel's handwriting, she wrote it for Defendant. He gave it to the doctor who acted upon it. He told the doctor he had just moved to the Kahoka area and purchased a farm. He had not done so. Dr. Crenshaw was suspicious. He called Defendant's former physician who was likewise suspicious. Defendant gave pharmacist McKee the prescriptions with Kahoka address to be acted upon. Defendant gave the same route and box number for his address after he was arrested. It was certainly inferable Defendant obtained prescriptions for the same drugs in a nearby small town. The pharmacist in that town could only remember the name "Wesley Cox," but what other Wesley Cox would use the address *Route 1, Box 143*, Memphis, Missouri. There exists sufficient evidence from which a rational trier of fact could find Defendant guilty. *State v. Barber*, 635 S.W.2d 342, 343[1] (Mo.1982). Point denied.

■ Defendant asserts double jeopardy for the convictions of obtaining dilaudid by

false address and of attempting to obtain dilaudid by false address. But not so. The first crime was committed on October 21 when Defendant obtained fifteen dilaudid pills. The crime of attempt occurred the next Monday, October 24, when Defendant came back to obtain the remainder called for in a prescription. He was unsuccessful on the second attempt. The fact that the two offenses occurred at the same location within a relatively short period of time does not prevent conviction of both offenses. *State v. Mudd*, 703 S.W.2d 63, 67[6] (Mo. App.1985). Point denied.

■ Defendant proffers the trial court erred when Russell Riggins was permitted to testify that on the same day as the charged conduct, he had filled a prescription for dilaudids for a Wesley Cox whose address on the prescription was listed as Route 1, Box 143, Memphis, Missouri. This evidence was admissible in that it tended to show an absence of mistake or accident and a common scheme or plan to obtain dilaudids. *State v. Hamilton*, 817 S.W.2d 8, 11[7] (Mo.App.1991). Point denied.

■ In his fourth point on appeal, Defendant asserts plain error when the trial court overruled his challenge for cause of venireperson Kay Biggerstaff. She was employed by the county as a child support enforcement investigator. The prosecutor, Scott Summers, was her superior.

Following voir dire, Defendant attempted to strike venireperson Biggerstaff for cause. The trial judge refused because none of her responses indicated she could not be impartial. She was then examined out of the presence of the jury as follows:

MR. ROBERTS: Ms. Biggerstaff, where are you currently employed?

VENIREPERSON: I am employed by Clark County, Missouri. I am an investigator of the child support enforcement association.

MR. ROBERTS: In the course of your duties are you required to cooperate or work with the prosecuting attorney of Clark County?

VENIREPERSON: Yes, sir.

MR. ROBERTS: Who is that gentleman?

VENIREPERSON: Scott Summers.

MR. ROBERTS: Is there anything about your association with Mr. Summers, the fact that you work with him, that would prevent you from rendering a fair, true, and impartial verdict, based solely upon what you hear in this court today?

VENIREPERSON: No, sir.

MR. ROBERTS: Is Mr. Summers your direct supervisor?

VENIREPERSON: Yes.

MR. ROBERTS: Would your relationship with Mr. Summers, and the fact that he is your immediate supervisor, in any way prevent you from rendering a fair, true, and impartial verdict, based solely on the evidence?

VENIREPERSON: No, sir.

MR. ROBERTS: Have you discussed the facts of this case with Mr. Summers, or anyone else on his staff?

VENIREPERSON: Absolutely not. I didn't even know who was on trial today.

MR. ROBERTS: Thank you. I have nothing further, Your Honor.

Defendant subsequently removed Ms. Biggerstaff with a peremptory challenge. Point of error was not included in Defendant's motion for a new trial. We review only for manifest injustice. Rule 30.20.

We find no manifest injustice. Nothing in this record suggests that Ms. Biggerstaff was not a qualified juror. She did not equivocate as to her ability to serve as a fair and impartial juror. Perhaps, the trial judge should have struck Ms. Biggerstaff from the jury, but the mere fact she was an investigator for the child support enforcement association for the county wherein Mr. Summers was prosecutor is not manifest injustice per se. *State v. Goode*, 721 S.W.2d 766, 769[3] (Mo.App. 1986); *State v. Smith*, 649 S.W.2d 417, 422[6, 7] (Mo.banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). Point denied.

■ In his fifth point on appeal, Defendant claims the trial court erred in overruling his objection to the presence of off-duty officers to shield the jury from viewing Defendant in the event Defendant should suffer from a seizure.

Defendant informed the court there was a likelihood he would suffer a seizure during the trial. The trial judge devised a plan to prevent the jury from viewing the seizure. If a seizure occurred, Defendant would be shielded from the jury's view by several off-duty law enforcement officers. The jury was then to exit the courtroom. The officers were in everyday clothing and were not wearing sidearms. During voir dire, the trial court informed venire that Defendant was prone to seizures, and that if a seizure should occur during trial, "some people invited in by me to—they will be seated over on the front row over here and they will come up to *offer assistance* to the Defendant in the event that should occur."

The Defendant has shown no prejudice. There was no evidence that the jury knew the "shield" to be law enforcement officials. The trial judge bears the responsibility for the conduct of the trial and the safety of all persons in the courtroom. *State v. Woltering*, 810 S.W.2d 584, 589[18] (Mo.App.1991). The trial court acted properly to assure a fair trial to Defendant. Point denied.

For his sixth point on appeal, Defendant claims the trial court erred in denying his motion for a continuance for the reason that when cooler weather arrived he would have been less likely to suffer a seizure. No medical evidence to support Defendant's claim was presented. Granting or denying a continuance rests within the sound discretion of the trial court. *State v. Schaal*, 806 S.W.2d 659, 666[12] (Mo.banc 1991). The determination of whether Defendant was physically able to proceed with the trial was also within the discretion of the trial court. *State v. Sandles*, 740 S.W.2d 169, 175[5] (Mo.banc 1987). The record shows no abuse of discretion. Point denied.

Judgment affirmed.

CRANE and AHRENS, JJ., concur.