STATE of Wisconsin,
Plaintiff-Respondent,

v.

Dale L. SMITH,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2004AP2035–CR. Oral argument December 6, 2005.
—Decided June 27, 2006.*

2006 WI 74

(Also reported in 716 N.W.2d 482.)

For the defendant-appellant-petitioner there were briefs by *Allison M. Ritter* and *Hartley Law Office,* Milwaukee, and oral argument by *Allison M. Ritter.*

For the plaintiff-respondent the cause was argued by *Juan B. Colas,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. JON P. WILCOX, J. The defendant, Dale L. Smith (Smith), seeks review of an unpublished decision of the court of appeals,[1] which affirmed Smith's judgment of conviction for operating a motor vehicle while intoxicated, second offense, and an order of the Milwaukee County Circuit Court, Russell W. Stamper, Sr., Reserve Judge, denying his motion for postconviction relief.

¶ 2. Smith contends that at trial, he was denied his constitutional right to a fair and impartial jury

---

[1] *See State v. Smith,* No. 2004AP2035–CR, unpublished slip op., ¶ 6 (Wis. Ct. App. Jan. 11, 2005).

when the circuit court, during voir dire, denied his motion to strike a juror for cause. Smith argues that an administrative assistant employed by the Milwaukee County District Attorney's Office was objectively biased because she worked for the same entity as the prosecuting attorney.

¶ 3. We hold that the circuit court reasonably concluded that Charlotte T. (Charlotte) was not objectively biased under the facts and circumstances, as a reasonable person in Charlotte's position could be impartial. Therefore, we conclude the circuit court did not erroneously exercise its discretion in denying Smith's motion to strike Charlotte for cause. Essentially, we decline to create a per se rule that excludes potential jurors for the sole reason that they are employed by the Milwaukee County District Attorney's Office. As such, the decision of the court of appeals is affirmed.

I

¶ 4. In the early morning hours of October 3, 2001, Smith was pulled over by City of Franklin Police Officer Rebecca Fletcher (Fletcher). Based on her observations at the scene, Fletcher requested that Smith take a Breathalyzer test in order to determine whether he had a prohibited alcohol concentration. According to the criminal complaint, Smith refused to submit to the test, and Fletcher arrested him. On October 16, 2001, a criminal complaint was filed against Smith for unlawfully operating a motor vehicle while under the influence of an intoxicant, contrary to Wis. Stat. §§ 346.63(1)(a) and 346.65(2) (1999–2000). This was Smith's second such offense.

¶ 5. A jury trial began on September 30, 2003. During voir dire, prospective juror Charlotte called to the court's attention that she worked for the Milwaukee

County District Attorney's Office. Specifically, Charlotte worked as an administrative assistant at the Children's Court Center in Wauwatosa. She also stated that she did not work on investigations. When asked whether she would have a problem being an impartial juror, Charlotte said, "No."

¶ 6. Later in chambers, Smith's counsel, Patrick D. Wait (Wait), moved to strike Charlotte for cause. The discussion between the court, Wait, and Assistant District Attorney Tiffany Harris (Harris) proceeded as follows:

> MR. WAIT: All right. I'd ask Number 9. be stuck [sic] for cause, she works for the D.A.'s office.
>
> THE COURT: What's the cause?
>
> MR. WAIT: She works for the law firm prosecuting this case. Her employer is Michael McCann.
>
> THE COURT: Is there authority for that?
>
> MR. WAIT: I think that is for cause.
>
> THE COURT: Is it occupational exclusion? By virtue of [the] fact she works for the D.A.'s office is it impossible for her to be impartial?
>
> MR. WAIT: I don't think I have to prove impartiality; I think there can be a finding her employer is prosecuting the case.
>
> THE COURT: I understand your opinion, do you have authority for that belief?
>
> MR. WAIT: No, I don't have any cases I can cite.
>
> THE COURT: State.
>
> MS. HARRIS: Judge, I really don't think—I don't know her. She doesn't work in this particular building; she's out at Children's Court. I don't think there is any authority for that.

THE COURT: Request denied. That was Number 9.

¶ 7. Besides Charlotte, Smith raised challenges to two other potential jurors in voir dire. These challenges were denied by the circuit court. In his brief to this court, Smith further argues that two additional jurors were "very problematic from a defense perspective."

¶ 8. First, Juror No. 2 stated that she had a friend who almost killed somebody while driving under the influence, and she had several friends arrested for driving under the influence with whom she did not associate anymore. Attorney Wait then asked her the following:

MR. WAIT: Does that make it more difficult for you to judge a case fairly?

JUROR NO. 2: No, I don't think so.

MR. WAIT: Do you think it's going to be difficult for you to be impartial here?

JUROR NO. 2: Yes.

Later in chambers, the court posed the following questions to Juror No. 2:

THE COURT: Can you be impartial with respect to this case?

JUROR NO. 2: I think so.

THE COURT: At this point, are you inclined to believe one side as opposed to the other side?

JUROR NO. 2: Not necessarily, no.

THE COURT: You are at point zero?

JUROR NO. 2: Yes.

THE COURT: You are fair and neutral as to each side?

JUROR NO. 2: Yes.

After this questioning, Wait did not continue with his argument that Juror No. 2 should be struck for cause. The court had previously noted that difficulty in remaining impartial is not sufficient to excuse a juror.

¶ 9. Next, Wait challenged Juror No. 6, who informed the court that he encountered a drunk driver while driving with his wife and children. When asked whether that experience would make it problematic for him to sit on a case where the defendant is charged with drunk driving, Juror No. 6 stated, "I guess I'd have to hear more information. At the time, if I had had a gun, I'd have shot him." During later questioning, Juror No. 6 revealed that his brother was put into a two-week coma because of a drunk driver. Wait then asked him the following:

MR. WAIT: Is that going to affect your ability to be impartial here?

JUROR NO. 6: I hope not, but I'm not sure.

MR. WAIT: You also said that when you saw someone suspected of drunk driving, if you had a gun you would have shot him.

JUROR NO. 6: I got that angry with him because I was with my wife and kids. . . .

MR. WAIT: Do you feel you can be fair here today?

JUROR NO. 6: I can try.

Later in chambers, the following discussion occurred:

THE COURT: The real question is, can you be impartial, fair, and neutral in this case?

JUROR NO. 6: I understand. I don't know, I haven't heard the evidence yet. I would say absolutely not if I found out the person had denied the police the right to check his blood or check that if he was. To me that tells me he was drunk. I don't care, he should go to jail.

THE COURT: You don't know the answer to that question, right?

JUROR NO. 6: No.

THE COURT: Given that you don't know the answer as to what the evidence is going to say, I need you to tell us at this time, right now, are you at zero neutral, or are you leaning one way or the other?

JUROR NO. 6: I'm trying to stay at neutral.

THE COURT: Where are you?

JUROR NO. 6: I believe I am neutral.

THE COURT: You have the best opinion of where you are, and you believe you are neutral. That's your belief, right?

JUROR NO. 6: Yes.

Ultimately, the court concluded that Juror No. 6 said he could be impartial, and it refused to strike him for cause.

¶ 10. In addition to these two jurors, Smith contends that Jurors Nos. 3 and 11 were problematic. Juror No. 3 was a police officer who had arrested people for operating while intoxicated. She said that she thought she could be impartial. Wait did not challenge Juror No. 3 for cause during voir dire.

¶ 11. Finally, in response to Wait's question of whether anyone on the jury had any feelings already developed about the defendant, Juror No. 11 stated, "I

kind of feel you would not be here unless you were doing something wrong." Wait then asked, "[s]o in that regard, you've already formed an opinion?" Juror No. 11 responded with "[p]erhaps" followed by "Yes. I do feel I can be impartial." In chambers, Wait informed the court that "[r]egarding Number 11, I wrote 'he has formed an opinion as to this defendant that he's guilty.' " The court noted, however, that Juror No. 11 said he could be impartial. There was no further discussion about Juror No. 11.

¶ 12. Smith ultimately used his four peremptory challenges to strike Jurors Nos. 2, 3, 6, and 11. Charlotte was seated on the jury, and on October 1, 2003, Smith was unanimously convicted and sentenced to 90 days of jail.

¶ 13. After his conviction, Smith filed a postconviction motion for an order vacating the judgment and for a new trial based upon his being denied the right to an impartial jury as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 7 of the Wisconsin Constitution. The circuit court denied his motion, concluding that "the mere fact that a juror works for the prosecuting office, without more, does not in and of itself disqualify the juror from service. . . . Taking all [the] factors into consideration, the court cannot infer that a reasonable person in Juror T.'s position would be biased."

¶ 14. On appeal, the court of appeals primarily relied on two of our previous decisions: *State v. Faucher,* 227 Wis. 2d 700, 596 N.W.2d 770 (1999), and *State v. Louis,* 156 Wis. 2d 470, 457 N.W.2d 484 (1990), in reaching its decision. Based on *Faucher,* the court noted that only objective bias, not statutory or subjective bias, was at issue. The court also analogized the facts in this case to *Louis* in that the prospective juror

and the prosecutor did not know each other. *See Smith,* No. 2004AP2035–CR, ¶ 6 ("The facts of record here suggest that this case is akin to *Louis.* Charlotte, although employed by the Milwaukee County District Attorney's Office, did not know the prosecutor in this case and the prosecutor did not know Charlotte."). The court of appeals agreed with the circuit court that " 'the mere fact that a juror works for the prosecuting office, without more, does not in and of itself disqualify the juror from service.' " *Id.* The judgment and order of the circuit court were therefore affirmed.

¶ 15. Smith then filed a petition for review in this court, and we granted review.

II

¶ 16. The sole question we must address on appeal is whether Smith was denied the right to an impartial jury by the circuit court's refusal to strike Charlotte for cause. Smith argues that Charlotte should have been disqualified as objectively biased because she was employed by the prosecuting attorney. Essentially, Smith seeks a per se rule in Wisconsin that employees of the Milwaukee County District Attorney's Office cannot serve on juries in criminal cases prosecuted by their employer. Alternatively, the State argues that Charlotte did not demonstrate objective bias, and this court should not create a per se disqualification for such employees.

¶ 17. We believe in this case, the circuit court reasonably concluded that Charlotte was not objectively biased under the totality of the circumstances. We further refuse to create a per se exclusion of potential jurors that are employed by the Milwaukee County District Attorney. In our view, the exclusion of jurors on

579

the basis of objective bias is best left to the case-by-case discretion of the circuit court.

█

¶ 18. "[A] criminal defendant's right to receive a fair trial by a panel of impartial jurors is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Art. I, § 7 of the Wisconsin Constitution, as well as principles of due process."[2] *Faucher,* 227 Wis. 2d at 715 (citing *Louis,* 156 Wis. 2d at 478; *State v. Gesch,* 167 Wis. 2d 660, 666, 482 N.W.2d 99 (1992)). "To ensure an impartial jury, Wis. Stat. § 805.08(1) provides for juror disqualification if a prospective juror 'is not indifferent in the case.' " *State v. Mendoza,* 227 Wis. 2d 838, 847, 596 N.W.2d 736 (1999).[3]

[2] The Sixth Amendment to the United States Constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]" Article I, Section 7 of the Wisconsin Constitution provides in part: "In all criminal prosecutions the accused shall enjoy the right . . . in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed[.]"

[3] Wisconsin Stat. § 805.08(1) (2003–04) reads in full:

The court shall examine on oath each person who is called as a juror to discover whether the juror is related by blood, marriage or adoption to any party or to any attorney appearing in the case, or has any financial interest in the case, or has expressed or formed any opinion, or is aware of any bias or prejudice in the case. If a juror is not indifferent in the case, the juror shall be excused. Any party objecting for cause to a juror may introduce evidence in support of the objection. This section shall not be construed as abridging in any manner the right of either party to supplement the court's examination of any person as to qualifications, but such examination shall not be repetitious or based upon hypothetical questions.

██

¶ 19. "Prospective jurors are presumed impartial, and the challenger to that presumption bears the burden of proving bias." *Louis,* 156 Wis. 2d at 478. We have recognized three types of bias: (1) statutory bias; (2) subjective bias; and (3) objective bias. *Faucher,* 227 Wis. 2d at 716.[4] Statutory bias is described by Wis. Stat. § 805.08(1) (2003–04) and concerns jurors who are "related by blood, marriage or adoption to any party or to any attorney appearing in the case, or has any financial interest in the case[.]" Charlotte does not fit within any of the categories constituting statutory bias.

██

¶ 20. Subjective bias "describe[s] bias that is revealed through the words and the demeanor of the prospective juror." *Faucher,* 227 Wis. 2d at 717. Stated another way, subjective bias "refers to the bias that is revealed by the prospective juror on voir dire: it refers to the prospective juror's state of mind." *Id.* Wisconsin Stat. § 805.01(1) (2003–04) also speaks to subjective bias, in that a juror who has "expressed or formed any opinion, or is aware of any bias or prejudice in the case[,]" shall be excused. Wis. Stat. § 805.08(1); *accord*

---

[4] In *State v. Faucher,* 227 Wis. 2d 700, 716, 596 N.W.2d 770 (1999), we first adopted these three terms to describe juror bias. Previously, courts of this state used the terms implied bias, actual bias, and inferred bias. *Id.* at 716. Generally, the terms statutory bias and subjective bias closely correspond, respectively, to the terms implied bias and actual bias. *Id.* at 716 n.5. Furthermore, the term objective bias "in some ways contemplates both our use of the terms implied and inferred bias." *Id.* at 716. However, as we emphasized in *Faucher,* "the case law does not always use the former terms in a consistent manner, [and] there is not an absolute, direct correlation between the former terms and the terms we adopt today." *Id.* at 716–17.

*Faucher*, 227 Wis. 2d at 717. Smith does not maintain that Charlotte was subjectively biased, nor does the record demonstrate that Charlotte presented any subjective bias. During voir dire, Wait asked Charlotte the following question: "Even though you work in the district attorney's office and the district attorney's office is prosecuting this action, do you feel you can be totally impartial and fair about this case?" To this, Charlotte answered simply, "Yes."

¶ 21. In this case, we are concerned with objective bias.

> [T]he focus of the inquiry into "objective bias" is not upon the individual prospective juror's mind, but rather upon whether the reasonable person in the individual prospective juror's position could be impartial. When assessing whether a juror is objectively biased, a circuit court must consider the facts and circumstances surrounding the voir dire and the facts involved in the case. However, the emphasis of this assessment remains on the reasonable person in light of those facts and circumstances. . . . [W]hen a prospective juror is challenged on voir dire because there was some evidence demonstrating that the prospective juror had formed an opinion or prior knowledge, [] whether the juror should be removed for cause turns on whether a reasonable person in the prospective juror's position could set aside the opinion or prior knowledge. *[State v.] Ferron*, 219 Wis. 2d [481], 498, 579 N.W.2d 654 [(1998)].

*Faucher*, 227 Wis. 2d at 718–19.

¶ 22. The standard of review for whether a juror is objectively biased is a mixed question of fact and law. *Id.* at 720. "[A] circuit court's findings regarding the facts and circumstances surrounding voir dire and the

case will be upheld unless they are clearly erroneous. Whether those facts fulfill the legal standard of objective bias is a question of law." *Id.*

> This court does not ordinarily defer to the circuit court's determination of a question of law. However, a circuit court's conclusion on objective bias is intertwined with factual findings supporting that conclusion. Therefore, it is appropriate that this court give weight to the circuit court's conclusion on that question.
>
> The circuit court is particularly well-positioned to make a determination of objective bias, and it has special competence in this area. It is intimately familiar with the voir dire proceeding, and is best situated to reflect upon the prospective juror's subjective state of mind which is relevant as well to the determination of objective bias. We therefore give weight to the court's conclusion that a prospective juror is or is not objectively biased. We will reverse its conclusion only if as a matter of law a reasonable judge could not have reached such a conclusion.

*State v. Lindell,* 2001 WI 108, ¶ 39, 245 Wis. 2d 689, 629 N.W.2d 223 (quoting *Faucher,* 227 Wis. 2d at 720–21).

¶ 23. Applying these standards, we hold that a reasonable circuit court judge could conclude that Charlotte was not objectively biased under the totality of the facts and circumstances. Therefore, the circuit court did not erroneously exercise its discretion in failing to strike Charlotte for cause.

¶ 24. In this case, the State of Wisconsin was represented by the Milwaukee County District Attorney's Office, located in the Courthouse Complex in downtown Milwaukee. Charlotte serves as an administrative assistant for the District Attorney's Office located

in the Children's Court Center in Wauwatosa. She does not work on investigations. Furthermore, the record does not show any indication that Charlotte recognized Harris or vice versa. There is also no evidence that Charlotte had any contact with Harris, any prior familiarity with the case, or any work connected to the office in Milwaukee.

¶ 25. Additionally, both attorneys pressed Charlotte to consider whether her position as an administrative assistant for the District Attorney would influence her decision, and each time she responded unequivocally that she could be fair and impartial. Although we recognize that "[i]t is not always enough that a prospective juror assures counsel or the court that he or she will be impartial[,]" *Lindell*, 245 Wis. 2d 689, ¶ 48, the subjective state of mind of the juror is an important consideration in the overall determination of objective bias. *Id.*, ¶ 39.

¶ 26. Smith relies on Justice O'Connor's concurrence in *Smith v. Phillips*, 455 U.S. 209, 221–22 (1982), for his position that Charlotte should have been dismissed as objectively biased because she was employed by the District Attorney's Office.

> While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

*Phillips*, 455 U.S. at 222 (O'Connor, J., concurring). What Smith fails to discuss, however, is the controlling

majority opinion of *Phillips,* and the United States Supreme Court's consistent position that government employees are not per se disqualified from serving as jurors in criminal cases. *See, e.g., Frazier v. United States,* 335 U.S. 497, 513 (1948) (concluding that a government employee, merely by virtue of his government employment, was neither more nor less biased than a nongovernment employee); *United States v. Wood,* 299 U.S. 123, 149 (1936) ("We think that the imputation of bias simply by virtue of governmental employment, without regard to any actual partiality growing out of the nature and circumstances of particular cases, rests on an assumption without any rational foundation.").

¶ 27. In *Phillips,* the Court refused to make a per se exclusion on the ground of implied bias of a juror who had pursued employment with the district attorney prosecuting the case. *Phillips,* 455 U.S. at 221. After the defendant was convicted in state court, he sought federal habeas relief, and the district court imputed bias, arguing the average man in the juror's position would believe his decision as a jury member would affect his job application. *Id.* at 214. The Court reversed and held that there was no basis for this finding when the defendant failed to show the juror was actually biased. *Id.* at 215–18. In the words of the Court, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable." *Id.* at 217.

¶ 28. We fully recognize there may be situations where an employee of the Milwaukee County District Attorney will be objectively biased. Indeed, " 'we caution and encourage the circuit courts to strike prospective jurors for cause when the circuit courts "reasonably

585

suspect" that juror bias exists.'" *Lindell,* 245 Wis. 2d 689, ¶ 49 (quoting *Ferron,* 219 Wis. 2d at 495–96). However, permitting an administrative assistant to serve on a jury who works at a different office in a different city than the prosecuting office and who otherwise knows nothing about the case, the defendant, and does not even recognize the prosecutor is not such an "extreme situation" that we must conclude the circuit court erred in refusing to strike Charlotte for cause.

¶ 29. Smith also contends that there is no meaningful distinction between this case and the Seventh Circuit decision of *United States v. Polichemi,* 219 F.3d 698 (7th Cir. 2000). In *Polichemi,* one of the jurors, Lorena Nape, was a 15–year employee of the United States Attorney's Office for the Northern District of Illinois, the prosecuting attorney in the case. *Id.* at 703. Nape worked as a secretary in the Civil Division, and there was evidence in the record that she sometimes worked on matters from the Criminal Division. *United States v. Polichemi,* 201 F.3d 858, 861–62 (7th Cir. 2000).[5] Furthermore, Nape admitted to recognizing the names of the prosecuting attorneys in the case, and being aware that they worked in her office. *Id.* at 862. She also stated that she could be fair and impartial. *Polichemi,* 219 F.3d at 703. The defendants moved to strike Nape for cause on the ground of implied bias, but the district court denied the motion. *Id.*

¶ 30. The Seventh Circuit reversed the defendants' convictions and held that although Nape may have been quite capable of maintaining her objectivity

---

[5] This earlier version of *United States v. Polichemi,* 201 F.3d 858 (7th Cir. 2000), was later partially vacated by the Seventh Circuit. *See United States v. Polichemi,* 219 F.3d 698, 702 (7th Cir. 2000). We cite to the earlier version solely for factual detail.

and "government employment alone is not, and should not be, enough to trigger the rule under which an employee is disqualified from serving as a juror in a case involving her employer," *id.* at 704, there are relationships that are "so close that the law errs on the side of caution." *Id.* The *Polichemi* court concluded that the relationship between Nape and the prosecuting attorney was just such a relationship.

¶ 31. Although there are factual similarities between *Polichemi* and this case, unlike Nape, Charlotte did not work on any matters for the Milwaukee office, nor did she recognize the prosecutor. In other words, the relationship was even more remote in this case than in *Polichemi*. Furthermore, *Polichemi* is, of course, not binding on this court. In Wisconsin, the court has generally been disinclined to create bright-line rules regarding juror exclusions. *See Louis*, 156 Wis. 2d at 479 (citations omitted) ("Both the United States Supreme Court and this court have been reluctant to exclude groups of persons from serving as petit jurors as a matter of law."). Instead, this court has preferred to leave the determination of bias in the able discretion of the circuit court. *See id.* (citing *Hammill v. State*, 89 Wis. 2d 404, 415, 278 N.W.2d 821 (1979)) ("[T]he circuit court has been given broad discretion to ensure that the jury as finally selected is impartial.").

¶ 32. Like the court of appeals, we believe *Louis* is particularly persuasive. In *Louis*, the circuit court refused to strike for cause two police officers despite the fact that the State's chief witness worked in the same police department and the officers recognized the witness. *Id.* at 474. We held that the officers were not per se ineligible to serve on a jury and concluded that the

587

circuit court properly exercised its discretion in determining that the two officers were not actually biased. *Id.*

¶ 33. We first noted that police officers were not among those groups the legislature had expressly excluded from service. *Id.* at 479–80. That is, law enforcement officers are not statutorily biased. *Faucher,* 227 Wis. 2d at 722. We also analyzed whether the officers demonstrated actual bias, or in today's terms, subjective bias. *Id.* at 723. Based on the questions posed to the officers at voir dire, the circuit court concluded that the officers could remain impartial and decide the case solely on the evidence presented. *Louis,* 156 Wis. 2d at 484. The record did not demonstrate otherwise; thus, the circuit court did not err in determining that the officers did not have actual bias. *Id.*

¶ 34. Finally, we observed that "[a] prospective juror's knowledge of or acquaintance with a participant in the trial, without more, is insufficient grounds for disqualification." *Id.* at 484 (citing *State v. Zurfluh,* 134 Wis. 2d 436, 438, 397 N.W.2d 154 (Ct. App. 1986)). In *Faucher,* we equated this language with our formulation of the objective bias standard and noted that the police officers were not objectively biased as "a reasonable person in the position of a law enforcement officer could remain impartial despite working in the same department as a state witness." *Faucher,* 227 Wis. 2d at 722.

¶ 35. Ultimately, we concluded in *Louis* that a per se exclusion of police officers was not in accord with the great weight of state and federal authority. *See Louis,* 156 Wis. 2d at 480–83. Furthermore, we agreed with the following declaration of the Second Circuit Court of Appeals:

> "This court does not choose to create a set of unreasonably constricting presumptions that jurors be excused for cause due to certain occupational or other special relationships which might bear directly or indirectly on the circumstances of a given case, where, as here, there is no showing of actual bias or prejudice."

*Id.* at 483 (quoting *Mikus v. United States,* 433 F.2d 719, 724 (2d Cir. 1970)). Thus, as we refused to exclude police officers from juries on a per se basis, so too do we refuse to exclude employees of the Milwaukee County District Attorney's Office on a per se basis. Without some other evidence that a prospective juror such as Charlotte cannot possibly be impartial, he or she should not be excluded solely on the basis of their employment.[6]

¶ 36. One of the few cases in which this court has made a per se exclusion of potential jurors is *Gesch,* 167 Wis. 2d 660. As noted, in most cases we have refused to make a per se disqualification. *See, e.g., State v. Sarinske,* 91 Wis. 2d 14, 33, 280 N.W.2d 725 (1979):

(The mere expression of a predetermined opinion as to guilt during the voir dire does not disqualify a juror per se. If the person can lay aside his or her opinion and

---

[6] We further believe that *State v. Louis,* 156 Wis. 2d 470, 457 N.W.2d 484 (1990), presents a stronger case of objective bias than this case does. Again, in *Louis* we allowed two police officers to sit on a jury even though the officers had to evaluate the credibility of another coemployee who was testifying as a witness. Here, Charlotte did not have to evaluate the credibility of Harris. Thus, in our view a work-related relationship between a juror and a witness is more indicative of objective bias than a work-related relationship between a juror and an attorney. If the connection in *Louis* was not enough for objective bias, we do not see how the connection in this case is enough for us to conclude Charlotte was objectively biased.

render a verdict based on the evidence presented in court, then he or she can qualify as an impartial trier of fact.);

*McGeever v. State,* 239 Wis. 87, 96, 300 N.W. 485 (1941) (a prospective juror's past employment as a dance hall inspector, under the supervision of the local district attorney and sheriff, did not per se disqualify him from jury service).

¶ 37. In *Gesch,* we held that a prospective juror who is related to a state witness by blood or marriage to the third degree must be struck from the jury due to an implied bias. *Gesch,* 167 Wis. 2d at 662. We first noted that generally the circuit court's discretionary determination of a juror's subjective bias will suffice to protect the defendant's right to an impartial jury. *Id.* at 666. "However, there are situations in which the relationship between a prospective juror and a participant in the trial is so close that a finding of implied bias is mandated." *Id.* at 666–67.

¶ 38. We concluded that the circuit court conducted a thorough search for subjective bias and found no such bias. *Id.* at 667. Despite the lack of subjective bias, we held that the juror should still have been removed for cause:

> [W]here a prospective juror is related to a state witness by blood or marriage to the third degree, special problems exist that render a circuit court's search for actual bias an inadequate protection of a defendant's right to an impartial jury. One such problem is the potential for unconscious bias. It is virtually impossible for a prospective juror to consciously estimate how the family relationship with a witness will affect his or her judgment. Although no intentional actual bias may exist, the risk of unconscious bias in these situations is manifest.

*Id.* As such, we held that "[i]n circumstances, such as here, the mere probability of bias is so high that in order to assure a defendant the fundamental fairness to which the defendant is entitled, we must imply bias and exclude the juror as a matter of law." *Id.* at 668.

¶ 39. Later, in *Faucher,* we described *Gesch* as follows:

> Our holding in *Gesch* is unique. In most circumstances . . . the conclusion that an individual is objectively biased requires some view of the facts and circumstances surrounding the voir dire and the case, as well as the prospective juror's answers. We therefore urge a circuit court to engage in a thorough voir dire when a party challenges a prospective juror through the class to which the prospective juror belongs. However, *Gesch* remains an example that some relationships are so fraught with the possibility of bias that we must find objective bias regardless of the surrounding facts and circumstances and the particular juror's assurances of impartiality.

*Faucher,* 227 Wis. 2d at 724.

¶ 40. Without more, we do not believe an employee of the Milwaukee County District Attorney's Office is an example of a relationship "so fraught with the possibility of bias" that we must per se exclude Charlotte. That Charlotte works as an administrative assistant in the Children's Court establishes little more than a distant acquaintance with the prosecutor. Under the facts and circumstances of this case, we conclude that the circuit court reasonably concluded Charlotte was not objectively biased. As noted, *Gesch* is a unique holding, and we do not think that standing alone, an employee/employer relationship between a juror and the Milwaukee County District Attorney, like a close familial relationship, renders it utterly impossible for a potential juror to be impartial.

## III

¶ 41. In sum, we hold that the circuit court reasonably concluded that Charlotte was not objectively biased under the facts and circumstances as a reasonable person in Charlotte's position could be impartial. Therefore, we conclude the circuit court did not erroneously exercise its discretion in denying Smith's motion to strike Charlotte for cause. Essentially, we decline to create a per se rule that excludes potential jurors for the sole reason that they are employed by the Milwaukee County District Attorney's Office. As such, the decision of the circuit court is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 42. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). This case raises the question whether a challenged prospective juror is objectively biased on the basis of her employment in the district attorney's office that is prosecuting the case.

¶ 43. The right to a trial by an impartial jury lies at the very heart of due process.[1] When a prospective juror is employed by an attorney in the case to be tried, the situation is "so fraught with the possibility of bias that we must find objective bias regardless of the surrounding facts and circumstances and the particular juror's assurances of impartiality."[2] The employee is, I conclude, objectively biased under the law and should, on objection, be struck for cause from the jury.

---

[1] *Irvin v. Dowd,* 366 U.S. 717, 721–22 (1961). A criminal defendant is guaranteed the right to a trial by an impartial jury by Article I, Section 7 of the Wisconsin Constitution.

[2] *State v. Faucher,* 227 Wis. 2d 700, 724, 596 N.W.2d 770 (1999) (discussing *State v. Gesch,* 167 Wis. 2d 660, 482 N.W.2d 99 (1992)).

¶ 44. Accordingly, I conclude that the circuit court erroneously refused to strike for cause the challenged juror, an employee of the Milwaukee County District Attorney, in this criminal case prosecuted by the Milwaukee County District Attorney's office.

¶ 45. I agree with the defendant that the circuit court's failure to disqualify the challenged prospective juror for cause is prejudicial error. The State agrees that if the circuit court erred, the error was prejudicial. I therefore dissent.

¶ 46. In determining whether a prospective juror manifests objective bias, the circuit court must determine "whether the reasonable person in the individual prospective juror's position could be impartial."[3] The primary concern in the objective bias analysis is whether the parties are provided with a fair trial.[4]

¶ 47. The majority opinion declines to find objective bias in the current case, reasoning that the relationship between the assistant district attorney prosecuting the case and the challenged prospective juror was "little more than a distant acquaintance."[5]

¶ 48. I agree that the challenged prospective juror is, in the instant case, not closely related to the assistant district attorney prosecuting the case. The challenged prospective juror worked in a different office, in a different community, and on different types of cases than the assistant district attorney prosecuting the case. Moreover, the assistant district attorney had no direct supervisory authority over the challenged juror.

¶ 49. Nevertheless, the assistant district attorney and the challenged prospective juror do share the same

---

[3] *Faucher,* 227 Wis. 2d at 718.

[4] *Id.* at 715.

[5] *See* majority op., ¶ 40.

ultimate superior, the Milwaukee County District Attorney. The Milwaukee County District Attorney is named as counsel along with the assistant district attorney on the court documents.

¶ 50. The distant degree of acquaintanceship relied upon by the majority opinion neither addresses nor diminishes the challenged prospective juror's perception of the risk of an adverse employment action. Certainly, a reasonable person under the circumstances might perceive the possibility of the employer being unhappy with his or her vote as a juror.[6] An objectively reasonable person might (intentionally or unintentionally, consciously or subconsciously) give the edge to the employer in light of ties of economic interests and loyalty.[7]

¶ 51. The risk of an employee sensing economic pressure to side with his or her employer is too great to rely on the prospective juror's representations of his or her ability to be unbiased. In addition, an employee may feel loyalty toward his or her employer and the positions the employer takes. An employee may reasonably

---

[6] I recognize that the juror is likely protected from official adverse employment action by civil service rules and is protected from retaliatory action by statute. *See, e.g.,* Wis. Stat. § 103.87 (2003–04) (prohibiting disciplinary action when an employee testifies in a trial); Wis. Stat. § 230.90 (2003–04) (formerly § 895.65) (prohibiting retaliation by a government employer). An employee may nevertheless harbor a fear of adverse employment consequences if he or she decides a case against the employer's position.

[7] This court reached a similar conclusion regarding independent arbitrators in *Borst v. Allstate Ins. Co.,* 2006 WI 70, ¶ 4, 291 Wis. 2d 361, 717 N.W.2d 42, in which we concluded that an arbitrator who has an ongoing employment relationship (as counsel) with one of the parties to an arbitration was "evidently partial" under Wis. Stat. § 788.10(1)(b).

wish to be a "team player" or may perceive peer pressure from coworkers to side with their employer. In contrast, an employee might be biased against an employer.

¶ 52. While a prospective juror may be able to disclaim bias, it will too often be impossible for employees to completely eliminate the influence of an employer who, in essence, keeps a roof over their head and food on their table. These concerns are precisely why a case-by-case analysis of subjective and objective bias in this type of case is not satisfactory, and a bright-line rule is required.[8]

¶ 53. I conclude that an objectively reasonable person in the place of the challenged prospective juror would not ordinarily be able to separate his or her economic and loyalty interests from the determinations he or she would be required to make as juror. An employee of a district attorney's office should therefore be struck as a juror for cause when that office is prosecuting a case.

¶ 54. As Justice O'Connor recognized in her concurring opinion in *Smith v. Phillips,* 455 U.S. 209, 222–24 (1982), some situations (which she labeled as "extreme"), including employment with the prosecuting agency, would justify a bright-line rule excluding the prospective juror:

> While each case must turn on its own facts, there are some extreme situations that would justify a finding of

---

[8] "It need not be assumed that any cessation of that employment would actually follow a verdict against the government. It is enough that it might possibly be the case; and the juror ought not to be permitted to occupy a position of that nature to the possible injury of a defendant on trial, even though he should swear he would not be influenced by his relations to one of the parties to the suit in giving a verdict." *Crawford v. United States,* 212 U.S. 183, 197 (1909).

> implied bias . . . [including] a revelation that the juror is an actual employee of the prosecuting agency . . . . None of our previous cases preclude the use of the conclusive presumption of implied bias in appropriate circumstances.

¶ 55. My conclusion is consistent with the statutes and case law of other jurisdictions.

¶ 56. Many states have statutes requiring employees of counsel to be struck for cause when they are prospective jurors in a case in which their employer is involved.[9]

¶ 57. Similarly, in many jurisdictions, case law establishes a strong policy against allowing employees of law firms or prosecuting agencies to serve on a jury in which their employer is involved.

¶ 58. In *United States v. Polichemi*, 219 F.3d 698 (7th Cir. 2000), for example, the United States Court of Appeals for the Seventh Circuit held that a 15-year employee of the United States Attorney's Office for the Northern District of Illinois, which was conducting the prosecution, was impliedly biased and should have been

---

[9] *See, e.g.,* Alaska R. Crim. Proc. 24(c)(10) (2006) (a juror is subject to challenge for cause if he or she is the "employee . . . of one of the attorneys"); MCR 2.511(D)(9) (2006) (Michigan, same); S.D. Codified Laws § 23A-20–13.1(4) (2006) (South Dakota, same).

Other state statutes create grounds for striking a potential juror for cause when the juror is an employee of a party. *See, e.g.,* Ark. Code Ann. § 16–33–304(b)(2)(B)(i) (2006) (providing grounds to strike for cause if the juror is employed by defendant or complainant); Idaho Code § 19–2020(2) (2006) (same); Iowa R. Crim. P. 2.18(5)e. (2005) (same); Kan. Stat. Ann. § 22–3410(2)(b) (2005) (same); Minn. R. Crim. P. 26.02(5)(1)6. (2006) (same); Ohio Crim. R. 24(C)(12) (2006) (same); Or. Rev. Stat. § 136.220(3) (2006) (same).

excluded for cause.[10] The Seventh Circuit distinguished *United States v. Wood,* 299 U.S. 123 (1936), and *Dennis v. United States,* 339 U.S. 162 (1950). In both *Wood* and *Dennis,* the jurors were not employees of the office prosecuting the case, but rather employees of other offices of the United States government.[11]

¶ 59. It is useful to compare *Polichemi* to the instant case. The U.S. Attorney's office for the Northern District of Illinois currently has over 300 employees, including 161 Assistant U.S. Attorneys, in two offices serving 18 counties.[12] It is unclear how many staff are employed by the Milwaukee County District Attorney,

[10] *United States v. Polichemi,* 219 F.3d 698, 704 (7th Cir. 2000).

[11] *Id.*

The Seventh Circuit also distinguished *Smith v. Phillips,* 455 U.S. 209 (1982), because the challenged juror in that case was an applicant for a job with the office of the prosecuting attorney, not an employee. *Polichemi,* 219 F.3d at 704–05.

This court has rejected a bright-line rule of exclusion based on government employment. *State v. Louis,* 156 Wis. 2d 470, 482, 457 N.W.2d 484 (1990) (quoting *United States v. Wood,* 299 U.S. 123, 149 (1936)) (" 'We think that the imputation of bias simply by virtue of governmental employment, without regard to any actual partiality growing out of the nature and circumstances of particular cases, rests on an assumption without any rational foundation.' ").

In *McGeever v. State,* 239 Wis. 87, 96–97, 300 N.W. 485 (1941), the court held that there is no bright-line rule excluding *former* part-time employees of a district attorney's office from serving on a jury in a case prosecuted by the same district attorney's office. Because *McGeever* addressed past employment, it is inapplicable to the instant case.

[12] Website of the United States Attorney for the Northern District of Illinois, "About Us" page, http://www.usdoj.gov/usao/iln/aboutus/index.html (last visited June 21, 2006).

the prosecuting agency and employer of the challenged juror in the instant case, but there are approximately 125 assistant district attorneys.[13] There is nothing in the *Polichemi* opinion indicating that the juror in that case was any closer to the prosecuting Assistant U.S. Attorney than the challenged juror in the instant case was to the prosecuting assistant district attorney.

¶ 60. *Polichemi* reflects and is consistent with the policies of over one hundred years of case law from various jurisdictions.[14]

¶ 61. Some state courts, like the majority opinion, have rejected a rule excluding prospective jurors based only on their employment relationship with counsel.[15] I disagree with the reasoning in these cases.

---

[13] Website of the Milwaukee County District Attorney, http://www.county.milwaukee.gov/display/router.asp?DocID=7715 (last visited June 21, 2006).

[14] *See, e.g., People v. Terry,* 35 Cal. Rptr. 2d 729, 731 (Cal. Ct. App. 1994) (deputy district attorney should have been struck for cause "because this very case is being prosecuted by his boss"); *Beam v. State,* 400 S.E.2d 327, 328 (Ga. 1991) (secretary in appellate section of district attorney's office prosecuting trial should have been struck for cause based on perception of bias); *State v. Kauhi,* 948 P.2d 1036, 1041 (Haw. 1997) (court shall imply bias when prospective juror is deputy prosecuting attorney employed in same office as the prosecutor trying the case); *Block v. State,* 100 Ind. 357, 363 (Ind. 1885) (deputy prosecuting attorney impliedly biased because he was employee and subordinate of prosecuting attorney); *Randolph v. Commonwealth,* 716 S.W.2d 253, 255 (Ky. 1986) (secretary for prosecuting attorney impliedly biased as a matter of law and therefore must be struck for cause), *overruled on other grounds by Shannon v. Commonwealth,* 767 S.W.2d 548 (Ky. 1988).

[15] *See, e.g., Lowe v. State,* 384 So. 2d 1164, 1171 (Ala. Crim. App. 1980) (employment by the district attorney did not impute bias as a matter of law); *State v. Cox,* 837 S.W.2d 532, 535 (Mo.

¶ 62. Because the challenged prospective juror has financial and loyalty ties to his or her employer, the juror cannot be expected to make an unbiased decision. A bright-line rule excluding an employee of a district attorney's office as a juror guarantees the criminal defendant his or her constitutional right to a fair and impartial jury and also protects prospective jurors from the unenviable position of deciding cases prosecuted by their employers.

¶ 63. The bright-line rule I propose is narrow. I do not propose a rule excluding all government employees from serving on a jury in every case involving the government.

¶ 64. Further, the rule I propose is not a categorical exclusion of all employees of a district attorney's office from serving on a jury. Employees of a district attorney's office may serve on civil juries if the district attorney's office is not involved as counsel in the case. Moreover, nothing in the rule I propose would prohibit an employee of a district attorney's office from serving on a jury in a criminal case prosecuted by a district attorney for another county.[16]

¶ 65. Although this court has been reluctant to do so, we have created bright-line rules to exclude prospective jurors when such rules were necessary. In *State v. Gesch,* 167 Wis. 2d 660, 482 N.W.2d 99 (1992), the court

Ct. App. 1992) (child support enforcement investigator not automatically excluded as juror even though prosecutor was her superior); *Roubideaux v. State,* 707 P.2d 35, 36 (Okla. Crim. App. 1985) (administrative assistant in district attorney's office not automatically excluded as juror).

[16] For example, had the challenged juror in the instant case lived in Waukesha, my proposed rule would not have prohibited her from serving on a criminal jury in a case prosecuted by the Waukesha County District Attorney.

held that prospective jurors related to a state witness by blood or marriage up to the third degree of consanguinity are "impliedly" biased and must be struck for cause.[17] Discussing *Gesch* in a later case, the court observed that "*Gesch* is unique. In most circumstances . . . the conclusion that an individual is objectively biased requires some view of the facts and circumstances surrounding the *voir dire* and the case, as well as the prospective juror's answers . . . . However, *Gesch* remains an example that some relationships are so fraught with the possibility of bias that we must find objective bias regardless of the surrounding facts and circumstances and the particular juror's assurances of impartiality."[18]

¶ 66. This rationale applies just as forcefully, if not more so, to employees of the prosecutor's office as it does to family members.

¶ 67. For the reasons stated, I conclude that, because the challenged prospective juror was an employee of the Milwaukee County District Attorney's office that was prosecuting the case, she was objectively biased and should have been struck for cause.

¶ 68. The error was prejudicial. I would reverse the defendant's conviction and remand the matter to the circuit court for a new trial.

¶ 69. I am authorized to state that Justices DAVID T. PROSSER and LOUIS B. BUTLER, JR. join this opinion.

---

[17] *State v. Gesch,* 167 Wis. 2d 660, 662, 482 N.W.2d 99 (1992). The court now says that such prospective jurors are "objectively biased."

[18] *Faucher,* 227 Wis. 2d at 724 (discussing *State v. Gesch,* 167 Wis. 2d 660, 482 N.W.2d 99 (1992)).