**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**November 4, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP648-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2014CF1362**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

  V.

RUSSELL L. ROSE, JR.,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed.*

Before Reilly, P.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Russell L. Rose, Jr., appeals from a judgment convicting him of numerous crimes. He contends that the circuit court erred in (1) denying his motion to suppress his statement to a firefighter-paramedic, (2) denying his counsel's request to withdraw, and (3) denying his motion for a new jury panel. For the reasons that follow, we affirm.

¶2    In 2014, Rose was charged with first-degree intentional homicide, attempted first-degree intentional homicide, aggravated battery, strangulation, false imprisonment, arson, and first-degree recklessly endangering safety. He was accused of killing his eleven-month-old daughter by repeatedly slamming her into the ground. He was also accused of attempting to kill his daughter's mother in addition to hitting, kicking, choking, and restraining her. Finally, he was accused of setting fire to his apartment building when police came to arrest him.

¶3    The State gave notice of its intent to use Rose's statements against him at trial. One statement that Rose sought to suppress involved a firefighter-paramedic named James Miller, who had accompanied Rose to the hospital after his arrest.[1] According to Miller, Rose asked him if he—Rose—had killed the baby. In response, Miller asked Rose if his intent was to kill the baby. Rose said that he smashed the baby's head into the concrete repeatedly to "rid her of the evil inside of her." Rose complained that he was not advised of his *Miranda*[2] rights before giving this statement. Following a hearing on the matter, the circuit court denied the motion to suppress.

---

[1]  Rose suffered nonlife-threatening burns as a result of the fire he started.

[2]  *See **Miranda v. Arizona**, 384 U.S. 436 (1966).

¶4    About one month before trial, Rose's counsel moved to withdraw. As grounds, counsel cited Rose's wishes as well as counsel's belief that the attorney-client relationship had broken down to the point where effective representation was not possible. The circuit court held a hearing on the motion. There, it pressed for the specific ways in which Rose was unable to work with counsel, telling Rose that it would allow him to change lawyers if he could provide the court with a good reason to do so. Finding that Rose could not point to a good reason to change counsel, the court denied the motion.

¶5    The case proceeded to trial. After the jury was chosen but before it was empaneled, the bailiff received a message from Sergeant Eric Klinkhammer that stated the following: "I spent a few minutes in the courtroom. When the jurors were leaving for their break several were looking at Rose's shackles, his left foot was visible near his chair. Perhaps he should be instructed to keep his foot inside of the desk so that it is not visible." At Rose's request, Klinkhammer testified about his observations. He said that he saw two potential jurors notice Rose's shackles but he "couldn't tell you exactly who saw what." The circuit court took several photographs in an effort to document what potential jurors would have seen.

¶6    Rose moved the circuit court for a new jury panel. He acknowledged that he did not know if the people that Klinkhammer saw looking at his foot had been selected for the jury; however, because "it appear[ed] that at least some of the potential jurors may have seen the shackles," he asked that the panel be released and the selection process start anew. The court disagreed, reasoning that although Klinkhammer was right to bring his observation to the court's attention, Rose's concern was "extreme supposition." It cited the photographs in support of its position and denied the motion.

3

¶7      The State subsequently presented its case to the jury, which convicted Rose on all counts.   The circuit court then sentenced Rose to life imprisonment without the possibility of extended supervision.   This appeal follows.

¶8      On appeal, Rose first contends that the circuit court erred in denying his motion to suppress his statement to Miller.  Rose maintains that the statement should have been suppressed because he was not advised of his *Miranda* rights before giving it.

¶9      No suspect may be subjected to custodial interrogation until he is "warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Statements made in violation of *Miranda* must be suppressed.  *See id.*

¶10     Whether a suspect's statements were admitted against him in violation of *Miranda* is subject to harmless error review.  *See State v. Martin*, 2012 WI 96, ¶44, 343 Wis. 2d 278, 816 N.W.2d 270.  An error is harmless when "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  *Id.*, ¶45 (citation omitted).  Assessing harmless error presents a question of law that we review de novo.  *State v. Ziebart*, 2003 WI App 258, ¶26, 268 Wis. 2d 468, 673 N.W.2d 369.

¶11     Assuming without deciding that a *Miranda* violation occurred, we conclude that the admission of Rose's statement to Miller was harmless.  As noted by the State, there was ample corroborating evidence demonstrating Rose's intent to kill his daughter.  The daughter's mother testified that she saw Rose grab her baby and slam her twice on the ground.  An intervening neighbor heard the sound

4

of a body hitting concrete and saw Rose throw his daughter to the ground "like [she] was garbage." Afterwards, Rose told 911 dispatchers that he had just killed his child to get back at the mother or because of the mother's provocation. Likewise, he told detectives that he "smashed" his daughter on the concrete with intent to kill her.[3] The autopsy confirmed that the daughter died from multiple blunt force injuries. Given such evidence, Rose would still have been convicted of first-degree intentional homicide absent his statement to Miller.

¶12 Rose next contends that the circuit court erred in denying his counsel's motion to withdraw. He asserts that the breakdown in the attorney-client relationship was evident and substantial.

¶13 Whether appointed counsel should be relieved is a matter within the circuit court's discretion. *State v. Lomax*, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988). The court must be satisfied that there is good cause to permit the withdrawal. *State v. Cummings*, 199 Wis. 2d 721, 748-49, 546 N.W.2d 406 (1996).

¶14 When Rose's counsel moved to withdraw, the circuit court addressed both counsel and Rose as to the grounds for the request. Counsel reiterated his concern that effective representation was not possible based upon recent interactions with Rose. Rose then detailed his reasons for distrusting

---

[3] Rose gave two statements to detectives. When interviewed on the night of the crimes, Rose said that he had sacrificed his daughter by "beat[ing] her in the ground like so many pieces." He said that he intended to kill her as "a punishment to the entire world." The next day, detectives interviewed Rose again. During this interview, Rose said that when the intervening neighbor arrived, he "grabbed the kingdom and smashed it to bits on the concrete in the alley." Rose explained that the "kingdom" was his daughter. He said he killed his daughter because he did not want the world to have her.

counsel, which included (1) his belief that a witness lied at the suppression hearing; (2) the fact that counsel continued to inform Rose of the State's plea offers after he told counsel that he did not want to hear about them; and (3) the fact that, at counsel's suggestion, Rose had earlier entered a plea of not guilty by reason of mental disease or defect (NGI plea).

¶15    The circuit court was not persuaded that Rose had a good reason for not working with counsel. It noted that counsel cannot control what a witness says on the stand. It further noted that part of counsel's job is to relay plea offers from the State. Additionally, the court explained that because Rose had withdrawn the NGI plea, there was "no harm done." Accordingly, it declined to delay the case by allowing Rose to change counsel.

¶16    On this record, we cannot say that the circuit court erroneously exercised its discretion in denying counsel's motion. The court considered the request and inquired into its basis. Ultimately, it did not believe that there was good cause to permit the withdrawal. Neither counsel nor Rose presented a sufficient reason for the court to find that their relationship had broken down to the point where adequate communication was no longer possible.

¶17    Finally, Rose contends that the circuit court erred in denying his motion for a new jury panel. Again, the motion was based on the possibility that jurors observed him wearing leg shackles.

¶18    Criminal defendants are guaranteed the right to an impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 7 of the Wisconsin Constitution, as well as under principles of due process. *State v. Smith*, 2006 WI 74, ¶18, 291 Wis. 2d 569, 716 N.W.2d 482.

6

Prospective jurors are presumed to be impartial, and the party challenging that presumption bears the burden of proving bias. ***Id.***, ¶19.

¶19 When jury bias becomes an issue, the circuit court must inquire into the circumstances. *See **Oswald v. Bertrand***, 374 F.3d 475, 480 (7th Cir. 2004). The nature of the inquiry is dependent upon the probability of bias. "[T]he greater that probability, the more searching the inquiry needed to make reasonably sure than an unbiased jury is impaneled." ***Id.***

¶20 Whether a juror is objectively biased presents a mixed question of fact and law. ***Smith***, 291 Wis. 2d 569, ¶22. We will not disturb the circuit court's findings of fact unless they are clearly erroneous. ***Id.*** However, the ultimate determination of whether those facts fulfill the standard of objective bias is a question of law that we review de novo. *See **id.***

¶21 Here, we are satisfied that the circuit court adequately inquired into the jury bias issue. It allowed Klinkhammer to testify about his observations and took several photographs of what potential jurors would have seen. We are also satisfied that the court properly denied Rose's motion for a new jury panel. In the end, there was no proof that any sitting jurors actually saw Rose's leg shackles, which were fairly inconspicuous. Accordingly, Rose's claim of objective bias was too speculative to warrant relief.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

7