HRUZ, J.
¶ 1 Emerson Lamb appeals a judgment of conviction based upon his no-contest plea to battery by a prisoner, as well as an order denying his post-conviction motion. Lamb argues the sentencing court demonstrated objective bias by making comments prior to sentencing that indicated it was very unlikely he would receive probation. We agree with Lamb that the court's comments-which occurred before it had heard any sentencing arguments from the parties and in a context where no presentence investigation report (PSI) was prepared-showed a serious risk that the court had prejudged Lamb's sentence. Accordingly, we conclude that Lamb had demonstrated the judge was objectively biased, we reverse the judgment and order, and we remand for a new sentencing hearing before a different judge.
BACKGROUND
¶ 2 Lamb was charged with two counts of felony bail jumping, as a repeater; a single count of battery by a prisoner, as a repeater; and disorderly conduct, as a repeater. Lamb entered into a plea agreement with the State whereby he pled no contest to battery by a prisoner, as a repeater. The remaining charges were dismissed and read in.[1] The circuit court ordered that a PSI be prepared, and Lamb was released on cash bond.
¶ 3 The sentencing hearing was scheduled for September 6, 2016, but Lamb had not completed the necessary PSI paperwork, nor had he appeared for his appointment with the PSI author. The hearing proceeded before Judge Mark McGinnis, who stated that "if somebody doesn't want to cooperate with the presentence investigation, then I, you know, revoke bond and he sits in custody." In response, Lamb's recently appointed public defender stated that Lamb had requested plea withdrawal, and the attorney asked for additional time to research whether such a motion had merit. As the court was discussing the rescheduling of the sentencing hearing, Lamb interjected that he believed he was "wrongfully charged with two bail jumping [counts]," he called the district attorney a "criminal," and he then left the courtroom. Lamb left the courthouse before he could be apprehended, and Judge McGinnis issued a bench warrant for his arrest.
¶ 4 Sentencing was rescheduled for October 18, 2016, by which time Lamb was in custody. Judge McGinnis questioned why Lamb was wearing a uniform indicative of jail segregation, to which Lamb replied that he had "voluntarily admitted" himself into segregation because he did not want to get into any more fights. Lamb stated he had Asperger's Syndrome and was being picked on frequently in jail.[2] He apologized for leaving the courtroom at the previous hearing and stated, "I wasn't thinking." Judge McGinnis responded that he believed Lamb's thoughts had been "of not listening, being disrespectful, being a danger and taking off, doing what you wanted to do."
¶ 5 Lamb was aware the State would be recommending probation. Accordingly, Lamb stated he no longer wished to withdraw his plea, and the parties agreed to forgo the PSI. The following exchange, which is critical to the issue on appeal, then occurred:
THE COURT: Okay. Well, [your attorney] told me [what] he thought was best, but I'm asking you because what I want to do is when I have people like you, I want to avoid future issues on appeal, so let me finish so that there's no game playing. When I read a letter that says though he wants to withdraw his plea and vacate his plea and all this, I want to make sure that you and I are on the same page, okay?
THE DEFENDANT: Yeah.
THE COURT: That's my purpose in asking these questions.
....
THE COURT: Okay. So I'm going to accept the waiver of the PSI on both sides. There was also in this letter, there was mention that you potentially wanted to withdraw or vacate your pleas, so are you familiar with that?
THE DEFENDANT: Yes, I am.
THE COURT: Okay. And that's something that you wanted to do once upon a time.
THE DEFENDANT: It was but not-after further discussion with my attorney, I don't want that anymore.
THE COURT: Okay. Why is that?
THE DEFENDANT: Because I feel like I could potentially benefit from, you know, maybe being on probation. Also, there's the possibility of leaving today , so I just-
THE COURT: Not really . Okay. Just thought I'd tell you that so you don't have any false hopes. I mean, there's a possibility, but it's probably not going to happen. Do you understand that? Yes?
THE DEFENDANT: Yes.
THE COURT: Okay. And I know you're shaking your head, but you need to answer out loud, okay? So I don't want you waiving your rights thinking something that might happen that maybe isn't going to happen. So now that you know that it probably isn't going to happen that you're going to get out today, do you still want to proceed with sentencing and not argue on your request to vacate the pleas or to withdraw the pleas and to waive your right to have a PSI?
THE DEFENDANT: Yes.
(Emphasis added.) The court then confirmed Lamb had discussed with his attorney the advantages and disadvantages of moving to withdraw his plea and of waiving his right to a PSI, and that they had sufficient time to do so.
¶ 6 Following this colloquy regarding Lamb's plea withdrawal request, Judge McGinnis heard argument from the district attorney and Lamb's attorney, both of whom recommended probation. After Lamb's allocution, in which Lamb blamed his criminal conduct on "hanging around the wrong people," the court began its sentencing remarks by stating that Lamb would be going to prison:
Well, just so there's no surprise, I mean, you are going to prison today. I'm making that decision, and I think it needs to be communicated to you clearly without keeping you on edge as I tell you what's going to happen, and you're going to prison today because we're sick and tired of you. I'm not your mom, I'm not your older brother, I'm not anybody else who's been involved in any of these; but as a system, when we have someone who for the last 15 or 16 years commits crimes at every opportunity, you haven't gone more than a few months in your life without committing crimes; and you've been given five, six, seven opportunities to be on probation and do well, and you have failed at every one of those opportunities.
The court stressed that Lamb had walked out of the courtroom at the previous hearing, and it found that he was a high risk to reoffend. The court stated that it did not "know many people with as low of character as you have." It ultimately imposed a four-year sentence, consisting of two years' initial confinement and two years' extended supervision.
¶ 7 Lamb filed a post-conviction motion seeking a new sentencing hearing before an impartial judge. Lamb argued that Judge McGinnis's statements that Lamb would likely not be receiving probation, made prior to his hearing any sentencing arguments, demonstrated that the court had "prejudged the defendant and determined that the defendant would not be released and would be sentenced to further confinement." The State responded that Lamb had not met the standard for demonstrating bias, and it argued that the sentencing court had couched its comments in terms of what was possible or probable.
¶ 8 Judge McGinnis denied the motion at a hearing. He stated he was not "prejudging" Lamb by noting Lamb was probably not going to be released from custody following the sentencing hearing. Rather, Judge McGinnis viewed his statements as "just trying to explain to him the importance of his rights and the fact that he's waiving these things. He might not get what he's thinking he's going to get, and that's what I was doing." Considered in that context, the court found nothing problematic about the exchange, and it also denied Lamb relief pending appeal. Lamb now appeals.
DISCUSSION
¶ 9 "A fair trial in a fair tribunal is a basic requirement of due process." In re Murchison , 349 U.S. 133, 136 (1955) ; see also State v. Herrmann , 2015 WI 84, ¶ 25, 364 Wis. 2d 336, 867 N.W.2d 772. A biased decision maker is "constitutionally unacceptable." Herrmann , 364 Wis. 2d 336, ¶ 25 (citing Withrow v. Larkin , 421 U.S. 35, 47 (1975) ). We presume that a judge has acted fairly, impartially and without prejudice. Id. , ¶ 24. However, "[i]f the judge evidences a lack of impartiality, whatever its origin or justification, the judge cannot sit in judgment." State v. Rochelt , 165 Wis. 2d 373, 378, 477 N.W.2d 659 (Ct. App. 1991). A party may rebut the presumption of impartiality by demonstrating bias by a preponderance of the evidence. Herrmann , 364 Wis. 2d 336, ¶ 24.
¶ 10 The federal Constitution is not merely concerned with a judge's own subjective determination of whether he or she is biased. See id. , ¶ 26. Rather, "the Due Process Clause has been implemented by objective standards that do not require proof of actual bias." Caperton v. A.T. Massey Coal Co. , 556 U.S. 868, 883 (2009). "In defining these standards the Court has asked whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.' " Id. at 883-84 (quoting Withrow , 421 U.S. at 47 ). This occurs when the circumstances of the case demonstrate a "serious risk" that the average judge would be tempted "not to hold the balance nice, clear and true." Id. at 884-85 (quoting Tumey v. Ohio , 273 U.S. 510, 532 (1927) ). A circuit court's partiality is a matter of law that we review de novo. State v. Goodson , 2009 WI App 107, ¶ 7, 320 Wis. 2d 166, 771 N.W.2d 385.
¶ 11 The foregoing is also the formulation of the standards Wisconsin courts have historically followed in discussing the scope of due process protections against judicial bias. See Herrmann , 364 Wis. 2d 336, ¶¶ 30-38. In particular, we find instructive two state cases, State v. Gudgeon , 2006 WI App 143, 295 Wis. 2d 189, 720 N.W.2d 114, and Goodson . We conclude that, under these authorities, Lamb has met his burden of demonstrating objective bias by showing a serious risk that Judge McGinnis prejudged his sentence.[3]
¶ 12 In Gudgeon , the circuit court had made known in writing that it wanted the defendant's probation extended before the extension hearing took place. Gudgeon , 295 Wis. 2d 189, ¶ 1. We agreed with the State's argument that the court's handwritten note did not establish actual bias. The note could be reasonably interpreted-by a lay person, not by a trial judge, an appellate judge, or even a legal practitioner, id. , ¶ 26-as merely an expression of the judge's general feelings about the probation agent's request, id. , ¶ 25. However, assessing objective bias, we concluded that because the note "signifie[d] a personal desire" to extend probation, a reasonable person would "discern a great risk that the trial court ... had already made up its mind to extend probation long before the extension hearing took place." Id. , ¶ 26.
¶ 13 Based on our decision in Gudgeon , the Goodson court also concluded there was an impermissible risk of bias under the facts in that case. There, the defendant was sentenced on various counts to lengthy periods of probation and extended supervision. Goodson , 320 Wis. 2d 166, ¶ 2. Goodson was warned during his sentencing that if he violated the conditions of his release, "you are going to come back here, and you are going to get the maximum." Id. Goodson's extended supervision was later revoked. Id. , ¶ 5. At the reconfinement hearing, the court stated its decision was "pretty easy," and it ordered Goodson reconfined for the maximum period of time available. Id. The court stated its sentencing decision was not based on its consideration of the sentencing factors but, rather, "because that's the agreement you and I had back at the time that you were sentenced." Id. We concluded that "a reasonable person would interpret the court's statements to mean it made up its mind before the reconfinement hearing." Id. , ¶ 10. The court impermissibly prejudged Goodson's reconfinement sentence by "unequivocally promis[ing] to sentence Goodson to the maximum period of time if he violated his supervision rules." Id. , ¶ 13.
¶ 14 Here, we similarly conclude Judge McGinnis's comments reveal, by a preponderance of the evidence, a serious risk of actual bias because a reasonable lay observer would interpret them as prejudging Lamb's sentence. Both Lamb and the judge were aware that the State and Lamb's attorney would be recommending probation for the battery charge. While Judge McGinnis was inquiring of Lamb whether he was making a knowing and intelligent decision to forgo his plea withdrawal request, Lamb stated he was comfortable doing so in part because there was a "possibility of leaving today." Judge McGinnis immediately interjected, said, "Not really," and advised Lamb not to have any "false hopes." He then repeatedly told Lamb his release to probation was "probably not going to happen."
¶ 15 The timing of this exchange is important to our conclusion. Although Judge McGinnis was aware of the joint probation recommendation, his statements occurred prior to his hearing any formal sentencing arguments from the parties. His statements were also made prior to his inquiring whether Lamb wished to exercise his statutory right of allocution. See WIS. STAT. § 972.14(2) ("Before pronouncing sentence, the court shall ask the defendant why sentence should not be pronounced upon him or her and allow the district attorney, defense counsel and defendant an opportunity to make a statement with respect to any matter relevant to the sentence."). The sentencing arguments in this case were particularly important because the parties had agreed to forgo a PSI, which would have contained essential sentencing information about the offense and Lamb's character, as well as an additional sentencing recommendation.
¶ 16 The apparent prejudgment of Lamb's sentence is especially problematic because of the manner in which circuit courts are required to conduct sentencing proceedings. A circuit court must sentence the defendant to the minimum amount of custody or confinement necessary to achieve the court's articulated sentencing objectives. State v. Gallion , 2004 WI 42, ¶¶ 23-24, 270 Wis. 2d 535, 678 N.W.2d 197. Probation is the first alternative courts should consider at sentencing, and the court must set forth its reasoning for a more severe sentence after considering the need to protect the public, the gravity of the offense, and the defendant's rehabilitative needs. Id. , ¶¶ 23-25. Judge McGinnis's statements in response to Lamb's oral contemplation of the "possibility" of probation failed to account for any of these sentencing factors and objectively show a "serious risk" that he had already made up his mind about what kind of sentence Lamb would receive.
¶ 17 The State posits that Judge McGinnis's statements do not reasonably demonstrate prejudgment because, at times, he spoke only of probabilities and possibilities. In the State's view, the distinguishing feature between this case on the one hand, and Gudgeon and Goodson on the other, is that Judge McGinnis never expressed to Lamb, in certain terms, what his sentencing decision would be. Although Judge McGinnis did intermittently state that there was a "possibility" of probation, the totality of his comments made clear to Lamb that such an outcome was highly unlikely to occur. Specifically, and importantly, when Lamb first spoke of the "possibility of leaving today," Judge McGinnis interrupted him and declared, "Not really." This particular response evinces that the judge was advising Lamb the possibility that he would order probation was either nonexistent or very minimal. The State's "contextual" argument, as advanced in its brief, never addresses the circuit court's "not really" statement. The judge reinforced this perception by telling Lamb he did not want him to "have any false hopes" and that probation was "probably not going to happen." Taken as a whole, Judge McGinnis's comments reasonably conveyed to Lamb that, before the court had heard any sentencing arguments, it had effectively decided against ordering probation.
¶ 18 The State also argues that the exchange between Judge McGinnis and Lamb merely "shows the judge attempt[ed] to protect Lamb by ensuring he was not pleading [no contest] based on inaccurate expectations." The State equates the court's colloquy with Lamb as equivalent to a circuit court's duties upon accepting a plea, designed to ensure that Lamb "knew the likely effect of his decision to abandon his motion to withdraw his plea and to make sure Lamb's decision was based on the merits of the case, and not the unrealistic expectation that he would be released that day."
¶ 19 We agree that Judge McGinnis likely had the noble and proper intention to protect Lamb by providing him with a full understanding of the consequences of abandoning his request for plea withdrawal. Nonetheless, in advising a defendant of his or her rights, a court cannot use language that shows to a reasonable lay observer that it has prejudged another matter at issue or is otherwise biased. Under the circumstances here, it would have been acceptable merely for the court to ascertain Lamb's understanding that it was not bound by the parties' plea agreement or sentencing recommendations. See State v. Hampton , 2004 WI 107, ¶ 20, 274 Wis. 2d 379, 683 N.W.2d 14 (holding that before a circuit court accepts a no-contest or guilty plea, the court must advise the defendant personally on the record that the court is not bound by the plea agreement).[4]
¶ 20 We stress that this appeal does not involve a review of Judge McGinnis's sentencing discretion. However justified Lamb's prison sentence may have been, we cannot ignore the constitutional requirement that Lamb be sentenced by an impartial tribunal. Our adherence to this fundamental precept of due process compels us to reverse Lamb's conviction and remand with directions that he receive a new sentencing hearing before a different judge.
By the Court. -Judgment and order reversed and cause remanded with directions.
Not recommended for publication in the official reports.

The read-in offenses also encompassed the charge in another case and a recent uncharged referral.

Asperger's Syndrome is a high-functioning type of autism spectrum disorder. Its symptoms are such that the individual often appears awkward in social situations. Asperger's Syndrome , WebMD.com , https://www.webmd.com/brain/autism /mental-health-aspergers-syndrome#1 (last visited Sept. 21, 2018).

The alleged bias in this case-prejudgment of a matter at issue as indicated by the judge's own words or conduct-is a more tangible concept than other varieties of alleged objective bias. Cf. State v. Herrmann , 2015 WI 84, ¶¶ 120, 148 & n.14, 364 Wis. 2d 336, 867 N.W.2d 772 (Ziegler, J., concurring). Evidence of objective bias in the context here is more direct than in cases where the bias claim turns on non-case-specific factors like an employment situation, see State v. Smith , 2006 WI 74, ¶ 16, 291 Wis. 2d 569, 716 N.W.2d 482, or a personal relationship, see State v. Faucher , 227 Wis. 2d 700, 730-34, 596 N.W.2d 770 (1999).

In making this observation, we in no way suggest the circuit court here was required to engage the defendant in this type of colloquy. The court had already accepted Lamb's plea, and the parties have directed us to no authority requiring a similar colloquy where the defendant wishes to proceed with sentencing despite having previously filed or contemplated filing a plea withdrawal motion.